[Civ. No. 30471. Fourth Dist., Div. Three. June 26, 1984.]

ALTA STRAUSS, Plaintiff, Cross-defendant and Appellant, v.
DOROTHY ELLEN SUMMERHAYS, Individually and as Trustee, etc.,
Defendant, Cross-complainant and Respondent;
CHARLES F. BENNINGHOFF III et al.,
Cross-defendants and Respondents.

Estate of CHRISTINE E. MELCHER, Deceased.
ALTA STRAUSS, Petitioner and Appellant, v.
DOROTHY ELLEN SUMMERHAYS, Individually and as Trustee, etc.,
Petitioner and Respondent;
CHARLES F. BENNINGHOFF III et al., Claimants and Respondents.

808

COUNSEL

Lord & Ross and Lawrence S. Ross for Plaintiff, Cross-defendant and Appellant and Petitioner and Appellant.

Wenke, Taylor, Evans & Ikola, Gary L. Taylor and Richard A. Derevan for Defendant, Cross-complainant and Respondent, Petitioner and Respondent and for Cross-defendants and Respondents and Claimants and Respondents.

OPINION

WALLIN, J.—Alta Strauss appeals a superior court judgment declaring decedent Christine E. Melcher's Leisure World residence to be an asset of an irrevocable trust and thus not subject to testamentary disposition. Strauss contends: (1) she was improperly denied a jury trial; (2) there was a failure to join an indispensable party; and (3) transfer of the residence to the irrevocable trust was legally impossible due to restrictions imposed by Leisure World.

I

Christine E. Melcher executed a will on July 14, 1979. On October 4, 1979, she signed an irrevocable trust (the trust) prepared by Charles Benninghoff III, husband of her grandniece, Nancy Lee Benninghoff. Melcher named Dorothy Ellen Summerhays, her niece, as trustee. The trust provided for Melcher's support during her lifetime and, upon her death, for distribution among her family members. The property transferred to the trust was listed on schedule "I" and consisted of substantially all of her assets, including her residence in the retirement community of Leisure World in Laguna Hills, California (the residence).

The ownership of the residence was signified by certificates for one membership in United Laguna Hills Mutual and Golden Rain Foundation, nonprofit corporations that own Leisure World (the Leisure World corporations).[1] The certificates were delivered to Summerhays on November 5,

---

[1]United Laguna Hills Mutual and Golden Rain Foundation are "stock cooperatives," a term which is defined in Business and Professions Code section 11003.2: "A 'stock cooperative' is a corporation which is formed or availed of primarily for the purpose of holding title to, either in fee simple or for a term of years, improved real property, if all or substantially all of the shareholders of such corporation receive a right of exclusive occupancy in a portion of the real property, title to which is held by the corporation, which right of occupancy is transferable only concurrently with the transfer of the share or shares of stock or membership certificate in the corporation held by the person having such right of occupancy. . . ." United Laguna Hills Mutual owns the residential units, and the members enter into an occupancy agreement with that corporation for a particular unit. Golden Rain Foundation owns the common areas and the recreational facilities.

1979,[2] but title to the certificates was never transferred on the books of the Leisure World corporations.

On June 19, 1980, Melcher executed a codicil to her will leaving her residence to Strauss, her housekeeper and friend. Melcher died on March 10, 1981.

Strauss filed an action against the Leisure World corporations and the beneficiaries and trustee of the trust to quiet title to the residence. Summerhays, as trustee, filed a cross-complaint for declaratory relief, contending the residence was an asset of the irrevocable trust and could not pass by will. In her answer to the cross-complaint, Strauss alleged Melcher was incompetent and was the victim of fraud and undue influence by the trustee. Strauss also filed a petition for probate of the will and codicil and for letters of administration with will annexed. Summerhays, individually and as trustee, responded with a petition contesting the codicil and opposing its probate on the grounds of incompetency, undue influence and fraud (will contest).

By stipulation of the parties, the quiet title action, the cross-complaint for declaratory relief and the will contest were consolidated for trial. Strauss requested a jury trial on the consolidated cases and timely deposited the jury fees.

In chambers prior to trial, the court determined the quiet title action and the cross-complaint for declaratory relief were equitable and should be tried without a jury. Each side proposed an alternative order for proceeding. Strauss contended she was entitled to a jury trial first. The court determined the equitable issues should be tried first, since a finding that the residence was an asset of the trust would render unnecessary a trial of the will contest.

During the opening statement, Strauss announced she would make no claim against the Leisure World corporations, and dismissed them without prejudice.

At the conclusion of the evidence, the court found the residence was an asset of the trust as of October 4, 1979, and Melcher did not own it after that date. Accordingly, the will contest was dismissed. Strauss appeals.

---

[2] At the time Melcher created the trust, her assets were being held by W. B. and Louise Camp, trustees of her previously existing revocable living trust. The Camps had possession of the membership certificates, although title to them was in the name of Christine Melcher, a widow. Melcher directed the Camps, by letter, to deliver her assets, and this was accomplished through counsel.

## II

Strauss contends the question of whether the residence had been knowingly and properly placed into the trust by Melcher should have been tried by a jury, notwithstanding these issues were raised in an action for declaratory relief.

The constitutional provision for a jury trial grants that right only in actions based upon the common law of 1850, in the event the cause of action, or one essentially similar, existed. If the action is addressed to equity powers of the court, the matter is one for the trial court alone. (*Dills* v. *Delira Corp.* (1956) 145 Cal.App.2d 124, 128 [302 P.2d 397].) In order to determine whether an action for declaratory relief is equitable or legal, we must look behind the declaratory relief label to the gist of the action. (*C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 9 [151 Cal.Rptr. 323, 587 P.2d 1136]; *Veale* v. *Piercy* (1962) 206 Cal.App.2d 557 [24 Cal.Rptr. 91]; *Dills* v. *Delira Corp.*, *supra*, 145 Cal.App.2d at p. 128.)

Looking at the pleadings in this action, we find Strauss and Summerhays each sought to quiet title to the residence. Both the complaint and the cross-complaint allege the elements, of a quiet title action,[3] and the prayers request a determination of title.

A simple action to quiet title, where possession is not an issue, is equitable. (*Veale* v. *Piercy*, *supra*, 206 Cal.App.2d at p. 561; *Dills* v. *Delira*, *supra*, 145 Cal.App.2d at p. 130; see 2 Witkin, Cal. Procedure (2d ed. 1971) Actions, § 79, pp. 951-952.) Thus, the court properly determined the cross-actions were equitable and did not require a jury.

Strauss correctly points out Probate Code section 371 guarantees a right to jury trial on the issue of incompetency, fraud and undue influence in a

---

[3]Code of Civil Procedure section 761.020 relating to quiet title actions provides: "The complaint shall be verified and shall include all of the following: [¶] (a) A description of the property that is the subject of the action. In the case of tangible personal property, the description shall include its usual location. In the case of real property, the description shall include both its legal description and its street address or common designation, if any. [¶] (b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. If the title is based upon adverse possession, the complaint shall allege the specific facts constituting the adverse possession. [¶] (c) The adverse claims to the title of the plaintiff against which a determination is sought. [¶] (d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought. [¶] (e) A prayer for the determination of the title of the plaintiff against the adverse claims."

will contest.[4] She argues that right should apply to the same issues in an action regarding the validity of an inter vivos trust.

■ However, the right to jury in a will contest is purely a statutory right, not a right grounded in a common law action. (*Estate of Beach* (1975) 15 Cal.3d 623 [125 Cal.Rptr. 570, 542 P.2d 994].) The statutory right to a jury trial on the issues of incompetency, fraud and undue influence cannot be expanded to an action involving the validity of an inter vivos trust, as this is an equitable action. (*Estate of Kreher* (1951) 107 Cal.App.2d 831 [238 P.2d 150] (issue of undue influence in action to set aside joint tenancy agreements not entitled to jury trial).) Furthermore, a plain reading of Probate Code section 371 indicates it is limited to issues involving a will, not an inter vivos trust.

■ Strauss argues she was denied her statutory right to a jury trial in the will contest by the trial court's decision to try the equitable issues first. However, where a disposition of equitable issues may obviate the necessity for a subsequent trial of legal issues, it is proper to try the equitable issues first. (*Veale v. Piercy, supra,* 206 Cal.App.2d at pp. 562-563.) Here, a determination the trust owned the residence eliminated the will contest. The trial court's action was correct.

### III

■ Strauss contends the trial court lacked subject matter jurisdiction because the Leisure World corporations were indispensable parties to the cross-complaint for declaratory relief.

Code of Civil Procedure section 389 states in part: "(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

[4]Probate Code section 371 provides: "On the trial, the contestant is plaintiff and the petitioner is defendant. Any issue of fact involving the competency of the decedent to make a last will and testament, the freedom of the decedent at the time of the execution of the will from duress, menace, fraud, or undue influence, the due execution and attestation of the will, or any other question substantially affecting the validity of the will, must be tried by a jury, unless a jury is waived as provided by the Code of Civil Procedure. If no jury is demanded, the court must try and determine the issues joined."

by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."

Here, the judgment quieting title to the residence in Summerhays does not bind the Leisure World corporations. If the corporations refuse to transfer title without a probate decree,[5] Summerhays will have to bring an action against them, which subjects her to a multiplicity of lawsuits and raises the possibility of an inconsistent result. Obviously, more complete relief could have been given to the parties had the Leisure World corporations been joined.

However, failure to join the Leisure World corporations did not deprive the court of subject matter jurisdiction. ■ "[F]ailure to join a party who may be regarded as 'indispensable' is not, under section 389, a jurisdictional defect in the technical sense. Although the court has no jurisdiction of the absent party, and its judgment cannot bind him, the court does have jurisdiction of the existing parties and has the power to make a judgment affecting their interests. It is for discretionary and equitable reasons, not for any want of jurisdiction, that the court may decline to proceed without the absent party." (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 368 [140 Cal.Rptr. 744]; accord *Martin* v. *Kehl* (1983) 145 Cal.App.3d 228 [193 Cal.Rptr. 312].)

■ Furthermore, Strauss is in no position to raise this issue for the first time on appeal. Not only did Strauss fail to object at trial, she dismissed the Leisure World corporations from her action. Any prejudice that may have resulted from the failure to join is to Summerhays, not to Strauss. (*Martin* v. *Kehl, supra,* 145 Cal.App.3d at p. 243.)

IV

■ Strauss contends the residence was never an asset of the trust because the bylaws and policy of the Leisure World corporations restrict the transfer of the membership certificates.

The bylaws restrict membership eligibility to "natural persons." They provide a membership certificate shall not be transferable except when the

---

[5]Counsel for the Leisure World corporations testified they would require a probate decree to transfer title.

corporation declines to exercise its option to repurchase and approves the transferee.[6]

Counsel for the Leisure World corporations testified that an individual is eligible to own membership certificates if he or she meets certain minimum age and financial requirements. It is the policy of the board of directors of the Leisure World corporations not to recognize trust ownership of residences, although this policy was not generally known at the time Melcher's trust was established. Prior to Melcher's death, however, this policy was publicized to realtors, lawyers and the public.

■ A stock cooperative may have the power to impose restrictions on the transfer of its shares in order to assure that the transferee is financially

---

[6]The bylaws of United Laguna Hills Mutual provide in part: "ARTICLE III [¶] MEMBERSHIP [¶] Section 1. *Eligibility.* Any natural person 52 years of age or over approved by the board of directors shall be eligible for membership, provided that he or she executes or has executed an occupancy agreement in a form prescribed by the corporation covering a specific dwelling unit in the housing project. . . . [¶] Section 7. *Transfer of Memberships.* Except as provided herein, memberships shall not be transferable and no transfer of any membership shall be made upon the books of the corporation within ten (10) days next preceding the annual meeting of the members. [¶] (a) *Death of Member.* If, upon death of a member, a membership in the corporation passes by will or intestate succession, the legatee or distributee, if approved by the corporation, may become a member of the corporation, if otherwise eligible, by assuming the obligations of the occupancy agreement in a manner satisfactory to the corporation within three months after a member's death and paying all amounts due thereunder. If a member should die and the obligation of the occupancy agreement is not so assumed in accordance with the foregoing, then the corporation shall have an option to purchase the membership from the deceased member's estate in the manner provided in paragraph (b) of this section. Written notice of the death shall be equivalent to notice of intention to withdraw. If the corporation does not exercise said option, the provisions of paragraph (c) of this section shall be applicable. The references to member therein include the personal representative of a deceased member. [¶] (b) *Option of Corporation to Purchase.* If a member desires to leave the project, he shall notify the corporation of such intention in writing and the corporation, for a period of thirty (30) days thereafter, shall have an option, but not the obligation to purchase the membership, together with all of the member's rights with respect to the dwelling unit, at an amount determined by the corporation as representing the transfer value thereof, less any amounts due from the member to the corporation under the occupancy agreement, and less the cost or estimated cost of all deferred maintenance, including cleaning, painting, redecorating, floor finishing and such repairs and replacements as the corporation may deem necessary to place the dwelling unit in suitable condition for another occupant. The purchase of the membership by the corporation shall immediately terminate a member's rights and the member shall vacate the premise forthwith. [¶] (c) *Procedure Where Corporation Does Not Exercise Option.* If the corporation should waive its right to purchase the membership under the foregoing option, in writing, or if the corporation should fail to exercise such option within the thirty (30) day period, the member may sell his membership to any person who has been duly approved by the corporation as a member and occupant. The corporation in approving a proposed transferee, shall not act contrary to any applicable federal, state or local law or regulation prohibiting discrimination based on race, color, or creed. When the transferee has been approved for membership and has executed the prescribed occupancy agreement, the retiring member shall be released of his obligations under his occupancy agreement, provided he has paid all amounts due the corporation.

able and willing to assume the costs and other cooperative tenant obligations (4 Miller & Starr, Current Law of Cal. Real Estate (rev. 1977) § 24.90, pp. 148-149). The restrictions will be upheld if they are not an unreasonable curtailment of the right of alienation. (1A Ballentine & Sterling, Cal. Corporation Laws (4th ed. 1983) § 210[3][a], pp. 10.39-10.41.)[7]

■ However, Strauss has no standing to enforce the restrictions on the membership certificates. These restrictions are part of the agreement entered into between the Leisure World corporations and Melcher at the time she purchased her membership certificates.

Strauss does not qualify as a third party beneficiary of that agreement. ■ For a third party to qualify as a beneficiary under a contract, the contracting parties must have intended to benefit that third party, and their intent must appear from the terms of the contract. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944 [132 Cal.Rptr. 424, 553 P.2d 584]; *Kirst* v. *Silna* (1980) 103 Cal.App.3d 759 [163 Cal.Rptr. 230].) While the beneficiary need not be named in the contract, he must be a member of a class referred to and identified in it. (*Kirst* v. *Silna, supra,* 103 Cal.App.3d at p. 763.) Strauss does not meet these requirements.

■ Neither can Strauss enforce the transfer restrictions as Melcher's successor in interest. For transfer restrictions to be enforceable, the restriction must not have been waived by the party seeking to enforce it. (See 1A Ballentine & Sterling, *supra,* § 210[5].) Here, Melcher's transfer to her trust in violation of the restrictions operated as a waiver, and one purporting to be her successor in interest cannot now enforce them.

## V

Strauss contends enforcement of the restrictions by her is unnecessary, as the transfer was legally impossible and thus void *ab initio*. ■ As a general rule, a property interest must be transferable to be the subject of an express trust. (See 1 Bogert, The Law of Trusts and Trustees (2d ed. rev. 1965) § 114, p. 581; 1 Scott, The Law of Trusts § 78, p. 688 et seq.; Rest.2d, Trusts, §§ 78, 79.)

However, the Restatement of Trusts discusses an exception to the general rule which applies here: "If rights under a contract cannot be effectively assigned, but the reason why they cannot be assigned is not applicable to a declaration of trust of such rights, a declaration of trust of such rights is

---

[7]Whether the restrictions involved are reasonable will not be addressed here, as the Leisure World corporations are not parties to the action before us.

effective. Thus, if such rights cannot be effectively assigned because assignment is prohibited by the contract creating them, a declaration of trust of such rights is effective unless the prohibition is properly interpreted to include declarations of trust. If such rights cannot be effectively assigned because such assignment would vary materially the duty of the obligor or increase materially the burden or risk imposed upon him by his contract or impair materially his chance of obtaining return performance, a declaration of trust is effective if it does not so vary the duty or increase the burden or risk or impair the obligor's chance of obtaining return performance." (Rest.2d Trusts, § 80, com. c.)

 Here, Melcher's assignment to the trust of her rights to her residence was merely a change in the legal title of the asset. In addition to her residence, she transferred substantially all her remaining assets to the trust, retaining the beneficial interest during her lifetime. Thus, the transfer did not vary the duty of the Leisure World corporations to her or impair their chance of return performance. The transfer was not void *ab initio*.

The trial court found Melcher's transfer of the residence was valid and binding as between her and her trustee and the finding is supported by substantial evidence. The transfer was accomplished by the declaration of trust, Melcher's letter to her former trustee and delivery of the certificates to the new trustee.

The judgment is affirmed.

Trotter, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied July 12, 1984, and appellant's petition for a hearing by the Supreme Court was denied August 23, 1984. Bird, C. J., was of the opinion that the petition should be granted.