Stephen P. KARO, Jr., individually, and on behalf of all others similarly situated, Plaintiff/Appellant,

v.

SAN DIEGO SYMPHONY ORCHESTRA ASSOCIATION, a California non-profit organization, Musicians Association of San Diego Local 325, American Federation of Musicians, et al., Defendants/Appellees.

No. 84-5512.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1984.

Decided June 10, 1985.

John S. Adler, Adler & Gniatkowski, San Diego, Cal., for plaintiff/appellant.

George S. Howard, Jr., Luce, Forward, Hamilton & Scripps, Richard D. Prochazka, Prochazka, Cline & Ford, San Diego, Cal., for defendants/appellees.

Before BOOCHEVER and HALL, Circuit Judges, and JAMESON,* District Judge.

BOOCHEVER, Circuit Judge:

Karo appeals from a district court order dismissing his hybrid suit for breach of a collective bargaining agreement and breach of the duty of fair representation on the ground that he lacked standing. Although Karo is a union member, he is not an employee within the collective bargaining unit. We affirm the dismissal.

## FACTS

Karo is a percussionist and a member of the Musicians Association of San Diego Local 325, American Federation of Musicians (Local 325). In 1969 he was employed by the San Diego Symphony Orchestra Association (Symphony) as substitute percussionist for one concert, but has not been employed by the Symphony since that time.

On May 4, 1983, Karo filed a complaint against Local 325 and the Symphony (defendants) pursuant to section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 (1982). The complaint was triggered by Karo's desire to obtain a contract chair in the percussion section of the Symphony. Karo alleged that Local 325 had breached its duty of fair representation by agreeing to a contract modification which bypassed the audition procedures and by failing to act on his grievance concerning the matter; that the Symphony breached the collective bargaining agreement by failing to hold auditions for the percussion chair; and that the Symphony and Local 325 conspired to modify the agreement in order to eliminate auditions so that another musician could be hired for the percussion chair without having to audition.

In 1980 Karo learned that the Symphony had an opening for a percussionist, and that auditions were to be scheduled during the Symphony's 1981–1982 season. At that time the relationship between the Symphony and Local 325 was governed by a collective bargaining agreement entered into on September 1, 1979, which specified the terms and conditions of employment for Local 325 members with the Symphony. Local 325 was recognized as the exclusive representative of Symphony musicians for the purpose of collective bargaining. It is undisputed that although Karo was a union member, he was never a member of the bargaining unit. The agreement, which was to terminate on August 31, 1982, was modified and extended for one year in February 1982.

The audition procedures in the original agreement provided that when a vacancy occurred the Symphony would give fifteen days written notice to the union. The Symphony was required to conduct blind auditions with the players performing behind a screen, and to follow elaborate procedures for impartially selecting the best applicant.

The 1982 modification permitted the Symphony to offer contracts without auditions to noncontract musicians with six years of service within ten years preceding April 10, 1982. Mr. Plank, a noncontract

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

percussionist with the required years of service, was awarded a seat without an audition under this provision.

## I

### Standing to Claim Breach of Duty of Fair Representation

Karo contends that the district court erred in dismissing his claim for breach of the duty of fair representation by Local 325. The court held that he lacked standing because he was not an employee of the Symphony and thus not a member of the collective bargaining unit.

Whether a plaintiff is required to be a member of a collective bargaining unit to have standing to bring a hybrid action under section 301 appears to be a question of first impression in this circuit. Although it is clear that a plaintiff who is an employee has standing to bring hybrid claims, *Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971); *see Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 617 (9th Cir. 1981), we have not found any case expressly stating that to have standing to bring these actions, an individual must be an employee.

Our analysis starts with the basis for such suits against the union. A union has the statutory duty to represent all of the members of the employee bargaining unit fairly. *Steele v. Louisville & Nashville Railroad*, 323 U.S. 192, 202–03, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). Accordingly, a member of the bargaining unit has a right of action against the union for breach of that duty. *Vaca*, 386 U.S. at 186, 87 S.Ct. at 914.

■ A union's duty of fair representation, however, does not extend to persons who are not employees in the bargaining unit. *See Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971). The *Allied* court held that because retirees are no longer members of the bargaining unit, the union has no duty to represent them in negotiations with the employer. *Id.; accord Cooper v. General Motors Corp.*, 651 F.2d 249, 250 (5th Cir.1981) (union owes no duty to supervisors who were formerly members of bargaining unit); *see also Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229, 1236 (8th Cir.) (duty of fair representation owed to "all employees within the unit represented"), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980).

■ If a union owes no duty of fair representation to retired employees of the bargaining unit it follows that no such duty would be owed to one who never was a member of the unit. Because the union owed no duty to Karo as a nonemployee of the bargaining unit, he lacks standing to sue for breach of such a duty.

## II

### Standing as a Third Party Beneficiary

Karo further asserts that under California law he has standing to bring an action against the Symphony because he is a third party beneficiary of the collective bargaining agreement.

■ In fashioning federal substantive law in suits brought under section 301, courts may adopt state law in whole or in part to the extent that it is compatible with federal labor policy. *Rehmar v. Smith*, 555 F.2d 1362, 1368 (9th Cir.1977) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957)); *see also Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1109 (9th Cir.1979). California law does not support Karo's position.

■ California Civil Code § 1559 (West 1982) provides that "[a] contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it." A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the con-

tract make that intent evident. *Strauss v. Summerhays*, 157 Cal.App.3d 806, 816, 204 Cal.Rptr. 227, 233 (1984); *Kirst v. Silna*, 103 Cal.App.3d 759, 763, 163 Cal.Rptr. 230, 232 (1980); *see also Garcia v. Truck Insurance Exchange*, 36 Cal.3d 426, 436–37, 682 P.2d 1100, 1104–05, 204 Cal.Rptr. 435, 439–40 (1984). Although the beneficiary need not be named in the contract, he must be a member of a class referred to and identified in it. *Strauss*, 157 Cal.App.3d at 816, 204 Cal.Rptr. at 233; *Kirst*, 103 Cal.App.3d at 763, 163 Cal.Rptr. at 232.

In the instant case, the dispositive provision of the premodified collective bargaining agreement governing audition procedure stated:

> When a vacancy occurs, the Employer's Manager shall notify the Union within fifteen (15) days.
> Auditions shall be scheduled in accordance with the availability of the Music Director. For each vacancy there shall be as many auditions as necessary to fill the vacancy, but, until the vacancy is filled and subject to the provisions of Section 6.4, there shall be at least two auditions per year (from the date the vacancy occurs).

There is nothing in the agreement which indicates that the audition procedure is for the benefit of nonemployee union members. On its face it is equally applicable to any musician seeking employment with the Symphony. Moreover, there is no indication that the provision was intended to benefit union members rather than the Symphony. But even if Karo could be considered a third party beneficiary of the 1979 agreement he still cannot prevail. The agreement was amended to provide specifically for filling positions without auditions when noncontract musicians had prior service for specified periods. Under the modified agreement Karo had no right to audition for the seat.

The Restatement (Second) of Contracts provides that in the absence of terms in a third party beneficiary contract prohibiting change or modification of a duty to an intended beneficiary, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement. Restatement (Second) of Contracts § 311(1), (2) (1981). The power to modify terminates when the beneficiary materially changes position in justifiable reliance on the promise before receiving notification of the modification. *Id.* § 311(3). Karo does not allege any such change of position. Thus, assuming that Karo could be regarded as a third party beneficiary under the 1979 contract, no rights he might have acquired thereunder had vested when the contract was modified in 1982. Accordingly the union and Symphony had the power to modify the agreement eliminating the open audition provisions when noncontract musicians had requisite experience for filling the position.

As indicated above, we are cognizant that labor agreements involve policy considerations that sometimes make ordinary contract law inapplicable. *See Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960). We find no reason, however, for not following third party beneficiary principles in this case. As long as no vested rights are affected, a union and an employer should be able to modify a collective bargaining agreement under circumstances such as these. As stated in *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 657 (8th Cir.1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967), "for an individual to bring an action under § 301 he must be seeking to enforce a right that is personal to him and vested in him at the time of the suit." Karo has not satisfied these two requirements.

In making this determination, we have not ignored Karo's contention that two federal cases, *Hazen v. Western Union Telegraph Co.*, 518 F.2d 766 (6th Cir.1975), and *Hill v. Iron Workers Local Union No. 25*, 520 F.2d 40 (6th Cir.1975), suggest that his status as a nonemployee/nonmember of the collective bargaining unit does not preclude his claim for lack of standing. Neither of these cases is a hybrid suit, although both were brought under section

301, and neither case supports Karo's claim.

*Hazen* was an action brought by the widow of an employee against his employer to enforce a severance pay provision in a collective bargaining agreement. She sued as a designated beneficiary under the agreement. The district court granted summary judgment against her on the ground that she had failed to demonstrate that the union, which had negotiated the agreement, was guilty of unfair representation because it failed to prosecute her claim as a grievance through binding arbitration. *Hazen,* 518 F.2d at 767.

The Sixth Circuit reversed, holding that the nonemployee widow could bring an action against her husband's employer for breach of contract under section 301. Because she sued as a third party beneficiary rather than as an employee, her case was not barred by failure to exhaust internal grievance and arbitration procedures. *Id.* at 769.

The difference between *Hazen* and the instant case is that in *Hazen,* the collective bargaining agreement expressly granted severance pay benefits to designated third party beneficiaries. The agreement stated:

> Should an employee who is entitled to severance pay die before he has received payment of such pay, the amount due shall be paid over by the Company to his or her designated beneficiary or estate, provided claim is made on the Company within one year from the date of death.

*Id.* at 767. In Karo's case there are no provisions in the initial collective bargaining agreement or the modification to that agreement that give nonemployee union members who are not members of the collective bargaining unit the specific right to claim benefits under the contract. Hence, Karo cannot establish his entitlement to rights under the contract in the manner that Hazen did.

For different reasons *Hill* is inadequate to support Karo's assertion of standing. In *Hill* an unemployed nonunion ironworker who had worked in the industry and desired to do so again brought an action

under section 301 alleging violations of the labor management contract on the ground that the union had deprived him of membership, an opportunity to work in his trade, and pension benefits under a system in which he had paid required contributions. The district court dismissed the case for lack of jurisdiction, stating that the parties never intended the plaintiff, a mere applicant for employment, to be a beneficiary under the agreement, and that the agreement was to protect only the union members. *Hill,* 520 F.2d at 41.

The Sixth Circuit reversed, holding that the plaintiff's contentions of unlawful interference with his right to work in his trade and the denial of benefits under the pension plan constituted alleged violations of the union-management contract which gave the district court jurisdiction to hear the case under section 301. *Id.* at 42. In the course of its disposition the court also looked to an equal employment opportunity provision of the collective bargaining agreement and reasoned that its terms were arguably for the benefit of persons like the plaintiff. *Id.* at 43.

One provision of the collective bargaining agreement required contributions by the employer to a fringe benefit fund for all work performed, including contributions for work of nonunion members such as Hill. Another article of the agreement assured that "equal employment opportunities will be provided to all workmen based on qualifications alone." The court found this opportunity for employment "at least *arguably* to be a contract provision for the benefit of persons situated as the plaintiff alleges himself to be." *Id.* at 43 (emphasis added). Accordingly the court held that Hill's claim of contract rights to employment based upon his qualifications and the availability of work as well as his claim to pension rights under the contract stated a cause of action under section 301 of the LMRA.

A major distinction from Karo's claim is that Hill presented a claim for vested pension rights. We question the prong of the *Hill* opinion indicating that Hill "arguably"

had a third party beneficiary claim to the opportunity of employment based on his qualifications. Even if we accept that holding, however, *Hill* would be on point only if Karo had a vested right under the collective bargaining agreement at the time it was modified. As we have pointed out above, the agreement was modified before a vacancy was declared. Karo had no vested rights at that time and he has no standing to complain of the modification of the agreement.

## CONCLUSION

Karo has no standing to sue the union for breaching a duty of fair representation because he was not a member of the bargaining unit to which such a duty was owed. He does not have standing to sue as a third party beneficiary because he had no vested rights at the time that the agreement was amended. Because the appeal is not frivolous, we decline to award attorney's fees as requested by the Symphony and the Union.

The judgment of dismissal is

AFFIRMED.