[No. D012739. Fourth Dist., Div. One. Dec. 13, 1991.]

GUS ASARE, Plaintiff and Appellant, v.
HARTFORD FIRE INSURANCE COMPANY et al., Defendants and
Respondents.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Stephen J. Dimeff for Plaintiff and Appellant.

Phillip Aler as Amicus Curiae on behalf of Plaintiff and Appellant.

Dretzin, Kauff, McClain & McGuire, Kauff, McClain & McGuire, Maureen E. McClain and Robert S. Unger for Defendants and Respondents.

Gibson, Dunn & Crutcher, David A. Cathcart, Pamela L. Hemminger and Eugene Scalia as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BENKE, J.**—In this case the trial court dismissed the plaintiff's discrimination lawsuit because the plaintiff had previously executed a workers' compensation release. We reverse because the record does not establish as a matter of law that the release covered plaintiff's discrimination claims. We also find plaintiff has the right to a jury trial on his claims.

### FACTUAL AND PROCEDURAL SUMMARY

In this proceeding plaintiff Gus Asare is pursuing claims under the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) Asare filed his discrimination complaint on June 4, 1987, and named Hartford Fire Insurance Company, three related entities and a coemployee as defendants. The defendants removed the case to the United States District Court for the Southern District of California because Asare had also made claims under title VII of the Civil Rights Act of 1964, 42 United States Code section 2000e et seq. and the Civil Rights Act of 1866, 42 United States Code section 1981. The district court dismissed the federal claims and remanded the remaining state claims to the superior court.

Shortly after the case was remanded to the superior court, the defendants moved to strike Asare's demand for a jury trial. The trial court granted the motion and we denied Asare's petition for a writ of mandate.

In a separate proceeding Asare made a workers' compensation claim against Hartford Fire Insurance Company. On March 4, 1988, while his discrimination claims were pending in district court, Asare executed a document entitled "compromise and release." The "compromise and release" was on a form provided by the Department of Industrial Relations and states in pertinent part: "3. Upon approval of this compromise agreement by the Workers' Compensation Appeals Board or a workers' compensation judge and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrators or assigns of said employee."

In exchange for the compromise and release, Hartford Fire Insurance Company and its workers' compensation carrier, Aetna Casualty & Surety Co., agreed to pay Asare $12,500. The compromise and release was approved by a workers' compensation judge on March 23, 1988.

Two years after the compromise and release was executed, two of the defendants in the instant discrimination case moved for summary judgment on the grounds the compromise and release released them for liability on the discrimination claims. The defendants' argument was contradicted by the attorney who had acted on Asare's behalf in negotiating execution of the compromise and release, Stanley L. Levine. Levine is a workers' compensation specialist and represented Asare in pursuing his workers' compensation claim. Susan England represented the Hartford Fire Insurance Company in the workers' compensation proceeding and, according to Levine, England was aware of Asare's discrimination claims. According to Levine, he and England had a conversation in which they both agreed the compromise and release would not be interpreted as a bar to Asare's discrimination claim.

According to England's deposition testimony, she does not recall discussing the scope of the compromise and release with Levine. When she was asked whether, in negotiating the compromise and release, she intended to dispose of Asare's discriminaton claims, she was instructed by the defendants' attorney not to provide an answer. Neither Levine nor England has appeared as counsel in this proceeding.

According to Asare, in signing the compromise and release he relied on Levine's assurance the document would not affect his discrimination claims.

The trial court agreed with the defendants' interpretation of the compromise and release and entered a judgment dismissing Asare's discrimination

claims. The court awarded the defendants their costs and $33,140 in attorney fees under the provisions of Government Code section 12965, subdivision (b).

Asare filed a timely notice of appeal from the judgment.

## ISSUES PRESENTED

The fundamental issue presented by Asare's appeal is whether the compromise and release bars pursuit of his discrimination claim. We find no bar exists as a matter of law. As we explain in part I of our opinion, at best the defendants have presented a factual dispute which may turn on the relative credibility of Levine and England.

However, our resolution of the compromise and release issue does not dispose of all the matters raised by Asare's appeal. As we explain in part II of the opinion, the trial court erred in denying Asare a jury trial.

I

We begin consideration of the compromise and release by restating the now familiar principles which govern our review following entry of summary judgment: "The purpose of a summary judgment motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. [Citations.] The summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. [Citation.] The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed. [Citations.] If the affidavits of the party opposing the motion contain factual averments within the general area of the issues framed by the pleadings, they are sufficient to make out a prima facie case. [Citation.] Any doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. [Citations.]" (*Cascade Gardens Homeowners Assn.* v. *McKellar & Associates* (1987) 194 Cal.App.3d 1252, 1255-1256 [240 Cal.Rptr. 113].)

More particular principles which govern interpretation of the compromise and settlement were set forth by the Supreme Court in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]: "Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written

contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms. That possibility is not limited to contracts whose terms have acquired a particular meaning by trade usage, but exists whenever the parties understanding of the words used may have differed from the judge's understanding.

"Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. [Citations.] Such evidence includes testimony as to the 'circumstances surrounding the making of the agreement . . . including the object, nature and subject matter of the writing . . .' so that the court can 'place itself in the same situation in which the parties found themselves at the time of contracting.' [Citations.] If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for . . .' [citations], extrinsic evidence relevant to prove either of such meanings is admissible." (Fns. omitted.)

■ Remembering all doubts must be resolved in Asare's favor, we find ample evidence in the record which supports Asare's contention the compromise and release was limited to his workers' compensation claims. In particular, we think it is significant the parties had separate counsel for each of their disputes, that the release here was negotiated by the parties' workers' compensation counsel and perhaps most importantly, although those lawyers were aware of the discrimination claims, no explicit reference to the discrimination claims appears in the release.[2]

Indeed, in remarkably similar circumstances, the court in *Lopez* v. *Sikkema* (1991) 229 Cal.App.3d 31, 38-39 [280 Cal.Rptr. 7] (*Lopez*), recently stated:

---

[2]We note paragraph 10 of the Industrial Accident Commission's form requires the parties state the reasons for the compromise. Paragraph 10 of Asare's release recites the following as the disputes between the parties: "There is a dispute as to the nature, extent and duration of permanent disability. There is a dispute as to the apportionment to be applied to this applicant's disability because of his pre-existing condition. There is a dispute as to the parts of body injured by reason of the alleged injury. There is a dispute as to the kind, need, frequency and quality of future medical treatment that may be required, if any."

Paragraph 10 then goes on to state: "Legal counsel for the respective parties have reviewed the medical reports submitted in this case, the opinions and conclusions of the doctors as set forth in those reports and the subjective complaints of the applicant as set forth in those reports.

"After assessing the information, the parties feel that the figure indicated in Paragraph 2 is a fair and equitable settlement of this case and have decided to resolve these questions in

"If the mandatory compromise and release form executed by appellants was intended to cover claims which are not compensable under the workers' compensation act, it should have contained express language to that effect. Indeed, since the civil action was pending at the time the parties executed the compromise and release, the settlement document would be expected to recite that the release included the particular lawsuit. It does not. Absent such express language, we cannot say as a matter of law appellants released respondent from liability for civil damages by execution of the release form."

In short, there was substantial circumstantial evidence which supports admission of Levine's recollection of his conversation with England as to the limited scope of the release. Thus as in *Lopez*, we cannot say as a matter of law Asare released the defendants from liability for damages under the FEHA.

In reaching the foregoing conclusion, we have rejected the defendants' interpretation of *Pichon* v. *Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488 [260 Cal.Rptr. 677] (*Pichon*). In *Pichon*, plaintiff sued his former employer for breach of contract, infliction of emotional distress and violation of Labor Code section 3602, subdivision (b)(2). The *Pichon* court held a workers' compensation compromise and release, similar in form to the one executed by Asare, did *not* cover all the causes of action the employee alleged: "We conclude that it was also error to hold that, as a matter of law, the release of any and 'all claims and causes of action . . . as a result of said injury' included appellant's claims for wrongful termination which survived summary adjudication. By its terms, the release was directed to claims that arose as a result of the injury described in the release, i.e., the physical and mental injuries appellant suffered as a result of harassment on the job and the termination of his employment. We have concluded that the only claims which survived summary adjudication and appellant's waiver of any non- economic damages, are limited to economic damages not caused by injuries to appellant's psyche. We have also concluded that appellant would not be entitled to recover any lost wages for any period of time that he was disabled. Thus, the remaining claims cannot be described as claims arising as a result of any compensable injuries to appellant's psyche. At the least, there is an issue of fact as to whether the parties intended the release to cover the type of claims appellant is now asserting." (212 Cal.App.3d at p. 502.)

dispute and any and all other questions relative to this injury which may exist now or may arise in the future [and] avoid the hazards and delays of litigation."

Although inferentially required by the form the parties used, no reference is made in paragraph 10 to Asare's allegations of racial discrimination or the part those allegations played in reaching the compromise.

Here, the defendants contend that, under *Pichon*, Asare's civil rights action was released as a matter of law because in this proceeding he seeks recovery for the same psychological injury described in the release. The court in *Lopez* rejected this somewhat tortured interpretation of *Pichon*: "[R]espondent incorrectly focuses upon the type of physical injury alleged in the release:

" 'A determination whether a cause of action is barred by the exclusive remedy provisions of the workers' compensation law must take into account not only the facts alleged (i.e., of physical injury) but also their relation to the scope and purposes of the workers' compensation statutory scheme.' [Citation.]

"If the conduct complained of cannot be reasonably viewed as a risk of the employment, an action at law is permitted. [Citations.]

"We do not assume merely from the type of *injury* stated in the compromise and release that appellants intended to release respondent from liability for civil damages resulting from *conduct* which is outside of the compensation bargain and therefore outside of the workers' compensation scheme. As the *Pichon* court recognized, '[a]t the least, there is an issue of fact as to whether the parties intended the release to cover the type of claims' now being asserted. [Citation.]" (*Lopez, supra*, 229 Cal.App.3d at p. 44, italics added.)

■ Because the summary judgment must be reversed, the defendants are no longer the prevailing parties under Government Code section 12965, subdivision (b). Accordingly, the attorney fees and costs awarded to defendants must also be vacated.

## II

In moving to strike Asare's demand for a jury trial, the defendants argued that, at the time of their motion, the only claim Asare was pursuing was based on violation of FEHA. (Gov. Code, § 12900 et seq.) The defendants argued the statutory scheme did not provide for a jury trial and hence one was not available. As we have noted, the trial court agreed and granted their motion.

As we have also noted, Asare filed a petition for a writ of mandate, challenging the trial court's order. In our April 26, 1990, order denying Asare's petition, we stated: "Presiding Justice Kremer and Justice Todd deny the petition as there is no right to a jury trial. (*Strauss* v. *Sammerhays* (1984)

157 Cal.App.3d 806 [204 Cal.Rptr. 227].) Justice Nares would grant the petition. The petition is denied." On appeal, Asare again argues he is entitled to a jury.

■ As the reference to the *Strauss* v. *Sammerhays* (1984) 157 Cal.App.3d 806 [204 Cal.Rptr. 227] (*Strauss*),[3] makes clear, our prior order reached the merits of Asare's argument. (See e.g. *Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748, 756 [134 Cal.Rptr. 52].) Thus the doctrine of law of the case would suggest we should not revisit the issue of Asare's right to a jury trial on his FEHA claim. (See *Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257, 267, fn. 5 [161 Cal.Rptr. 475, 604 P.2d 1365].)

The doctrine of the law of the case, however, is not inflexible or unlimited in its application. (See *Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 434-435 [212 Cal.Rptr. 466, 696 P.2d 1308].) In particular it does not apply to issues which were not considered in the previous appellate ruling (*Wood* v. *Elling Corp.* (1977) 20 Cal.3d 353, 360 [142 Cal.Rptr. 696, 572 P.2d 755]) and it may be departed from where there has been an intervening change in the law. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 179 [18 Cal.Rptr. 369, 367 P.2d 865]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 756, pp. 724-725.) These exceptions to the rule are pertinent here because, after our order was filed, and while Asare's appeal has been pending, the Supreme Court filed its opinions in *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 56-57 [276 Cal.Rptr. 114, 801 P.2d 357] (*Peralta*), and *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 262-265 [284 Cal.Rptr. 718, 814 P.2d 704] (*Walnut Creek*).[4]

Admittedly since the time of our initial ruling on the issue, the right to a jury trial on an FEHA claim has not been directly addressed by our Supreme

[3]In *Strauss* the court held that determination of the validity of a transfer to a trust was an equitable action in which the adversaries had no right to a jury. (*Id.* at pp. 812-813.) The court stated: "The constitutional provision for a jury trial grants that right only in actions based upon the common law of 1850, in the event the cause of action, or one essentially similar, existed. If the action is addressed to equity powers of the court, the matter is one for the trial court alone. [Citation.] In order to determine whether an action for declaratory relief is equitable or legal, we must look behind the declaratory relief label to the gist of the action." (157 Cal.App.3d at p. 812.)

[4]We also note that since the time of our order denying Asare's petition, the Supreme Court filed its opinion in *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 88-91 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*). In *Rojo*, the court found that the victims of discrimination, in addition to claims under the FEHA, may state common law tort claims against their employers. (*Id.* at p. 89.) The court found that such discrimination contravenes the dictates of fundamental public policy. It is plain on remand Asare may, if he wishes, attempt to amend his complaint to add a common law claim under *Rojo*. Because our prior ruling on Asare's demand for a jury trial did not, and indeed could not, consider a *Rojo* claim, our ruling in no way prevents Asare from seeking a jury trial on any *Rojo* claim he is able to assert. (See *Wood* v. *Elling Corp.*, *supra*, 20 Cal.3d at pp. 360-361.)

Court. Nonetheless in our view *Peralta* and *Walnut Creek* are intervening precedent which substantially undermine our prior ruling on Asare's right to a jury trial on his statutory claims. (See *DiGenova* v. *State Board of Education, supra,* 57 Cal.2d at p. 179.)

Although in determining the right to a jury trial we are governed by the common law as it existed in 1850 (see *Strauss* v. *Sammerhays, supra,* 157 Cal.App.3d at p. 813), the right to a jury trial cannot be denied solely because a particular right of action was not known in 1850. " 'It is suggested that the statute was enacted since the adoption of the Constitution, and for that reason is not within the guaranty of trial by jury. The constitutional right of trial by jury is not to be narrowly construed. It is not limited strictly to those cases in which it existed before the adoption of the Constitution but is extended to cases of *like nature* as may afterwards arise. It embraces cases of the *same class* thereafter arising. . . . The introduction of a new subject into a class renders it amenable to its general rules, not to its exceptions.' " (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 299-300 [231 P.2d 832], italics added.) "When deciding whether a jury trial is required for a matter prosecuted *in court* we look to the 'gist of the action.' If the 'gist' is legal, as opposed to equitable, we have recognized a right to jury trial. [Citations.]" (*McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 379-380 [261 Cal.Rptr. 318, 777 P.2d 91] (*McHugh*), fn. omitted.)

Determining whether the gist of a claim is in law or equity "depends in large measure upon the mode of relief to be afforded." (*Paularena* v. *Superior Court* (1965) 231 Cal.App.2d 906, 911 [42 Cal.Rptr. 366].) Generally, where the legal remedy of damages is full and adequate and can do complete justice between the parties, no equitable remedy is available. (*Id.* at p. 912; *Philpott* v. *Superior Court* (1934) 1 Cal.2d 512, 517 [36 P.2d 635, 95 A.L.R. 990].) Accordingly in such cases the right to a jury trial exists. (*Paularena* v. *Superior Court, supra,* 231 Cal.App.2d at p. 914.) On the other hand, where damages are but one of a full range of possible remedies or consideration of equitable principles is necessary in determining whether damages may be awarded, the right to a jury trial is not guaranteed. (See *Southern Pac. Transportation Co.* v. *Superior Court* (1976) 58 Cal.App.3d 433, 437 [129 Cal.Rptr. 912].)

Under the FEHA a claim may proceed under alternative paths. "An aggrieved person may file a complaint with the Department (§ 12960), which must promptly investigate (§ 12963). If the Department deems a claim valid it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate, the

Department may issue an accusation to be heard by the Commission. (§§ 12965, subd. (a), 12969.) [¶] If the Department fails to issue an accusation within 150 days after the filing of the complaint, or if it earlier determines not to prosecute the case and the matter is not otherwise resolved, the Department must give the complainant a 'right to sue' letter. The complainant may then bring a civil suit in superior court. [Citations.] In a private action under the FEHA, the superior court may award compensatory and punitive damages. [Citations.]" (*Peralta, supra,* 52 Cal.3d at p. 45.)

 In *Peralta* the court held that in *employment* discrimination cases the Legislature did not authorize the Fair Employment and Housing Commission (Commission) to award compensatory damages. (52 Cal.3d at p. 60.) In finding the Commission had no power to award compensatory damages in employment cases, the court in *Peralta* reiterated the principle "that the jury, as the trier of fact, is in the best position to determine just compensation for emotional and mental distress." (*Id.* at p. 57.)

In *Walnut Creek,* the court found that although the Legislature had given the Commission power to award compensatory damages in *housing* discrimination cases, that power could not extend to an award of "nonquantifiable general compensatory damages for emotional distress and other intangible injury." (54 Cal.3d at p. 267.) Applying a "substantive limitations" test developed in *McHugh, supra,* 49 Cal.3d 348, the court found that under the judicial powers clause of the California Constitution, article VI, section 1, the compensation for intangible losses may be awarded only by agencies vested with judicial powers. The court found the Commission's award of nonquantifiable damages violated the judicial powers clause because such damages are not reasonably necessary to the Commission's primary role of preventing discrimination but in reality transfer to the agency the judicial function of determining claims which are in the manner of traditional private tort actions. (*Walnut Creek, supra,* 54 Cal.3d at p. 264.)

Like the statement in *Peralta* concerning the role of a jury in determining compensation for emotional distress, the holding in *Walnut Creek* that an award of nonquantifiable compensatory damages exceeds the substantive limitations test strongly suggests such damage claims also give rise to the right to a jury trial. Significantly, in addition to developing a test for determination of judicial powers questions, the court in *McHugh* held that the substantive limitations test also governs the right to a jury trial in administrative proceedings. "Once a court has determined that exercise of a challenged administrative power meets the 'substantive limitations' requirement imposed by the state constitution's judicial powers doctrine— i.e., the challenged activities are authorized by statute or legislation, and are

reasonably necessary to, and primarily directed at, effectuating the administrative agency's primary, legitimate regulatory purposes—then the state constitution's jury trial provision does not operate to preclude administrative adjudication." (49 Cal.3d at p. 380.) In our view in light of *McHugh*, the holding in *Walnut Creek* that nonquantifiable compensatory damages cannot be awarded by the Commission indicates that in considering the fundamental nature of private actions under the FEHA, the Supreme Court has concluded such actions are closely akin to the common law claims which are protected by the right to a jury trial.[5]

In sum we do not believe it is appropriate to apply the doctrine of law of the case here. Rather we find that in light of the reasoning expressed in *Peralta* and *Walnut Creek,* the trial court erred in granting the defendant's motion to strike Asare's jury demand.

### III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

The judgment must be reversed because the defendants did not meet their burden on a motion for summary judgment. On remand Asare has the right to a jury trial on his FEHA claims.

Judgment reversed and the case is remanded for further proceedings consistent with the views expressed in our opinion. Appellant to recover his costs of appeal.

Kremer, P. J., and Todd, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 12, 1992. Lucas, C. J., Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.

---

[5]See also *Wooddell* v. *International Brotherhood of Electrical Workers etc.* (1991) __ U.S. __ [116 L.Ed.2d 419, 112 S.Ct. 494]; *Teamsters* v. *Terry* (1990) 494 U.S. 558, 570-571 [108 L.Ed.2d 519, 110 S.Ct. 1339]. In *Wooddell* and *Terry* the court held that because, in general, an award of money damages was the traditional form of relief offered in the courts of law and because no exception applies which would change the notice of the relief provided, plaintiffs in actions brought under the Labor-Management Relations Act of 1947 (29 U.S.C. § 185 et seq.) and the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401 et seq.) are entitled to jury trials on their damage claims.

*See footnote, *ante*, page 856.