**GENENTECH, INC., Plaintiff,**

v.

**The REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant.**

**MDL Docket No. 912.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 26, 1996.

Gerald P. Dodson, Emily A. Evans, Arnold, White & Durkee, Menlo Park, CA, Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN, for University of California.

John E. Kidd, Maurice N. Ross, Rogers & Wells, New York City, Hugh E. Reynolds, Jr., David T. Kasper, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Genentech, Inc.

*Entry Granting UC's Motion for Summary Judgment on Genentech's Third Party Beneficiary Claim*

DILLIN, District Judge.

This cause comes before the Court on UC's motion for summary judgment on Genentech's third party beneficiary claim and on Genentech's cross motion for discovery pursuant to Fed.R.Civ.P. 56(f). Because we GRANT UC's summary judgment motion, we

1. A settlement between Lilly and Genentech resulted in the resolution of cause numbers IP–88–1463–C, IP–87–0219–C and IP–93–1340–C, as well as the elimination of Lilly's and Genentech's claims against one another in the present case. *See* Order, Cause Numbers IP–87–0219–C, IP–88–1463–C, IP–93–1340–C, IP–90–1679–C and IP–92–0223–C (S.D.Ind. Jan. 13, 1995) (orders entered pursuant to Lilly and Genentech's stipulations of dismissal).

Moreover, this Court earlier enjoined further prosecution of cause number IP–92–0223–C in favor of IP–90–1679–C, the mirror image of IP–92–0223–C and the first of the two cases filed. *See* Entry Denying Genentech's Motion to Amend

need not consider Genentech's cross motion for discovery.

*Background*

The present action is one of six cases consolidated in this Court for pretrial proceedings by the Judicial Panel on Multidistrict Litigation. *See In re Recombinant DNA Technology Patent and Contract Litig.,* Docket No. 912 (J.P.M.L. Feb. 19, 1992), *aff'd, In re Regents of the Univ. of Cal.,* 964 F.2d 1128 (Fed.Cir.1992); *In re Recombinant DNA Technology Patent and Contract Litig.,* Docket No. 912 (J.P.M.L. Oct. 1, 1993). The consolidated cases arose out of various research arrangements and license agreements among the Regents of the University of California (UC), Genentech, Inc. (Genentech) and Eli Lilly and Company (Lilly). The instant case is the only one of the consolidated actions remaining actively litigated.[1]

At the foundation of this dispute is one of UC's patents, United States Patent Number 4,363,877 (the '877 patent). The research that resulted in the issuance of this patent occurred in the late 1970s, when certain of UC's scientists attempted to produce human growth hormone (hGH) by means of recombinant DNA technology. UC applied for the '877 patent in April 1978. The patent reportedly claims an intermediate product used in the recombinant DNA production of hGH.

On September 12, 1978, Lilly and UC executed an option agreement (1978 option agreement). This agreement gave Lilly the exclusive right to acquire from UC a license of certain patents that eventually might issue

Its Answer and Counterclaims and Enjoining Further Prosecution of IP–92–0223–C, Cause Number IP–92–0223–C (S.D.Ind. March 22, 1994).

Finally, on December 11, 1995, this Court issued a Memorandum of Opinion and Judgment following a bench trial of cause number IP–92–0224–C. *See* Memorandum of Opinion, Cause Number IP–92–0224–C–D/G (S.D.Ind. Dec. 11, 1995), and Judgment, Cause Number IP–92–0224–C–D/G (S.D.Ind. Dec. 11, 1995).

In light of the foregoing activity, only those claims between Genentech and UC in cause number IP–90–1679–C actively remain litigated.

from UC's research relating to hGH—research that the United States Department of Health, Education and Welfare (the HEW) had funded. The 1978 option agreement included the application for the '877 patent. In exchange, Lilly agreed to underwrite the costs of obtaining patent protection.

The 1978 option agreement contained several conditions. The agreement was contingent upon the HEW granting UC the right to execute such a license and was subject to any additional limitations imposed by the HEW. The option agreement also provided that if Lilly did obtain a license, Lilly would sublicense all qualified applicants.

As Lilly and UC anticipated, the HEW required that UC enter into an Institutional Patent Agreement (IPA) as a condition for the HEW's funding of the research leading to the '877 patent. The IPA obligated UC to license any patents arising from the work funded by the HEW on a nonexclusive basis and subject only to a reasonable royalty. The IPA was executed on April 1, 1980. That same year UC applied for, but was denied, a waiver of the nonexclusive provision in the IPA. On December 14, 1982, the United States Patent and Trademark Office (PTO) issued the '877 patent to UC.

In November of 1984, the law governing patents and licenses to inventions secured via federal funding was amended. In 1987, UC again applied for a waiver of the HEW's nonexclusive licensing provision, contending before the HEW that it anticipated litigation over the '877 patent and, therefore, needed the revenues that an exclusive license could bring. In 1988, the HEW granted UC's request and, in March of 1989, UC issued to Lilly an exclusive license to the '877 patent. Under this license agreement, Lilly was not obligated to grant any sublicenses.

On August 6, 1990, Genentech initiated the present action in this Court by filing a complaint for a declaratory judgment that the '877 patent is invalid, unenforceable and noninfringed. Genentech amended its Complaint on August 27, 1990, and the Amended Complaint not only sought a declaratory judgment, but also lodged antitrust and pendent state law claims against both UC and Lilly. Subsequently, the issues have been reduced to: 1) Genentech's claim that the '877 patent is invalid, noninfringed and unenforceable; 2) UC's counterclaim for patent infringement; and 3) Genentech's claim that UC breached its third party beneficiary obligations to Genentech. Presently, we address Genentech's third party beneficiary claim in the context of UC's motion for summary judgment.

## Discussion

A summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). While facts are viewed in the light most favorable to the nonmoving party, there is an affirmative burden of production on the nonmoving party to defeat a proper summary judgment motion. *Baucher v. Eastern Indiana Prod. Credit Ass'n,* 906 F.2d 332, 334 (7th Cir.1990) (following *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Before the Court denies summary judgment, it must be determined whether there is sufficient evidence for a jury to find a verdict in favor of the nonmoving party. *Id.* (following *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)).

█ In order to succeed in a breach of contract claim based on a third party beneficiary theory, a plaintiff not only must prove his status as an intended third party beneficiary, *see* Restatement (Second) of Contracts §§ 302, 304, but also must prove that he materially changed his position based on the terms of the subject contract, or he must have brought suit on the promise, or he must have manifested assent to it at the request of the promisor or promisee. *Id.* § 311.

Under general principles of third-party beneficiary law, the parties to the contract may rescind or modify the contract as they see fit without the approval of the third-party, at any time before the beneficiary's rights vest. *See* E.A. Farnsworth, *Contracts* § 10.8 (2d ed. 1990). After the contract is accepted, adopted or acted upon by a third-party beneficiary, however, its

rights become vested. *Id.* The Restatement (Second) of Contracts § 311 provides that, in the absence of a term in the third-party beneficiary contract prohibiting modification of a duty to an intended beneficiary, the promisor and promisee retain the power to discharge or modify the agreement by subsequent agreement. *See Karo v. San Diego Symphony Orchestra Ass'n,* 762 F.2d 819, 822 (9th Cir.1985); *Price v. Pierce,* 823 F.2d 1114, 1122 (7th Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988). This power to modify or rescind terminates, however, when the "beneficiary materially changes position in justifiable reliance on the promise before receiving notice of the modification." *See Karo,* 762 F.2d at 822; Restatement (Second) of Contracts § 311(3) (1981). This is because a rescission or modification after a change in position by a third-party beneficiary deprives that third-party of its expectations under the contract.

*Malden Mills v. ILGWU Nat'l Retirement Fund,* 766 F.Supp. 1202, 1211–12 (D.Mass. 1991); *see also Flagstaff Medical Center, Inc. v. Sullivan,* 773 F.Supp. 1325, 1359 (D.Ariz.1991); *Detroit Bank & Trust v. Chicago Flame Hardening,* 541 F.Supp. 1278, 1282–83 (N.D.Ind.1982).

According to Genentech, a provision in the 1978 option agreement between UC and Lilly created its third party beneficiary rights. In that provision, the parties stipulated that

[i]t is agreed and understood that Lilly shall grant sublicenses under United States Licensed Technology, if a license thereunder is obtained from Regents, to all qualified applicants....

Genentech Ex. 1. Genentech opines that it was a qualified applicant under the terms of the UC–Lilly agreement; hence, Genentech continues, if Lilly obtained a license from UC, Genentech was positioned to obtain a sublicense.

Preliminarily, we note that for purposes of the present motion, UC assumes that Genentech qualifies as an intended third party beneficiary.[2] Hence, we need not be concerned with the first prong of the test applicable to a third party beneficiary claim, and we advance our analysis to consideration of the second prong of the test—whether Genentech materially changed its position in reliance on the contract, brought suit on it, or manifested assent to the promise before the promise was altered.[3]

In support of its summary judgment motion, UC first points to an earlier Entry of this Court, in which the Court stated in the context of a motion to dismiss, that

examination of the Amended Complaint illustrates that Genentech's allegations of detrimental reliance are sparse. We believe, however, that the allegations are sufficient to survive a motion to dismiss. First, Genentech alleges, albeit is a somewhat conclusory fashion, that it reasonably relied on the 1978 option agreement. Am. Compl. ¶ 42. Moreover, an inference can be drawn that Genentech's continuing investment of its resources in hGH demonstrated a belief that it could obtain a sublicense.

Entry Granting in Part and Denying in Part Lilly's Motion to Dismiss Counts II–V and VII–VIII of Genentech's Amended Complaint, Cause Number IP–90–1679–C (S.D.Ind. May 2, 1994). Although Genentech's third party beneficiary claim withstood the motion to dismiss, UC urges, Genentech's sparse allegations of detrimental reliance are insufficient to avoid summary judgment.

Genentech does not counter UC's argument with proof of a material change in its position arising from its reliance on 1978 option agreement. Rather, Genentech asserts that Lilly and UC validly did not rescind the 1978 option agreement. Consequently, Genentech urges, it need not show detrimental reliance to overcome UC's summary judgment motion. Genentech also insists that "a great injustice would result if Genentech were required to prove detrimental reliance in order to prevail on its third party beneficiary claim." Genentech Opp'n

---

**2.** UC, however, does not concede this point.

**3.** UC makes several other arguments in its quest for summary judgment. However, with Genentech apparently unable to offer evidence on material change in position, we need not consider UC's alternate grounds for summary resolution.

at 21. Genentech complains that Lilly and UC implemented the 1978 option agreement vis-a-vis the '877 patent in such a fashion so as to contravene Genentech's right to a sublicense. Specifically, Genentech states that Lilly and UC concealed from Genentech Lilly's exercise of the 1978 option agreement. Genentech argues that the evidence could illustrate that UC and Lilly entered the license agreement pertaining to the '877 patent as early as 1981. If this is so, Genentech asserts, the contract necessarily would have included the sublicensing provision found in the 1978 option agreement because at that time neither had UC been exempted from the HEW's nonexclusive licensing provision nor had the law governing patents issuing from federally funded research changed.

As we examine the parties' positions, the Court is mindful of its obligation to view the facts in the light most favorable to the non-moving party. Still, we believe that summary judgment in UC's favor is directed. We explain.

We first address Genentech's argument that it need not show assent to or detrimental reliance on the 1978 option agreement because, it asserts, Lilly and UC validly did not rescind that agreement in entering in the 1989 license agreement. Specifically, Genentech argues that no valid rescission occurred because UC and Lilly did not return to one another the consideration they exchanged in support of the option agreement. We, however, agree with UC that Lilly and UC were free to rescind the 1978 option agreement or modify its terms so long as Genentech had not yet materially changed its position by relying on the promise therein. The 1989 license agreement between UC and Lilly represents a contemplated outgrowth of their earlier option agreement. Moreover, the modification contained within it—that is, extending to Lilly an *exclusive* license without a sublicensing requirement—was within the parties contracting power so long as no third party beneficiary had relied to its detriment on the terms of the original contract. *See Karo*, 762 F.2d at 822. Before 1989, not only had the law governing patents secured through federally funded research been amended, but also UC had received permission from the HEW to license the '877 patent on an exclusive basis.

Genentech cites several cases in support of its proposition that UC and Lilly validly did not rescind the 1978 option agreement with the 1989 license agreement. Among these are *Malone v. Crescent City Mill & Transp. Co.*, 77 Cal. 38, 18 P. 858 (1888); *Pitzer v. Wedel*, 73 Cal.App.2d 86, 165 P.2d 971 (1946); and *Dick v. Woolson*, 106 Cal.App.2d 415, 235 P.2d 119 (1951). An examination of these cases, however, leads us to conclude that they are inapposite to the case before the Court. Specifically, in each of these cited cases, the third party had incurred a debt that was the subject of the third party beneficiary contract prior to the execution of the document between the promisor and promisee creating the third party beneficiary rights.

In contrast, Genentech contends that Lilly and UC included in the 1978 option agreement a sublicensing provision (prompted by the HEW's mandate), and that such provision created its third party rights. Genentech does not allege that the 1978 option agreement was executed in recognition of some debt Lilly or UC owed it. Therefore, we reject Genentech's attempt to parallel the factual scenario in this case to those it cites in support of its opposition to UC's summary judgment motion.

There is no evidence to indicate that UC and Lilly abused their contracting powers when they entered the 1989 license agreement, which agreement replaced or modified the 1978 option agreement. Because the 1989 license agreement is a valid document and Genentech did not file the above-captioned cause of action until August 1990, Genentech must show either reliance on or assent to the 1978 option agreement in order to maintain its third party beneficiary claim.

We now turn to Genentech's second and final argument in defense of its failure to submit evidence illustrating that it relied on or assented to the 1978 option agreement. As we stated earlier, Genentech alleges that UC and Lilly concealed from it the fact that Lilly exercised its option under the 1978 option agreement.

Interestingly, Genentech—for the first time—alleges in its opposition brief that by concealing Lilly's exercise of its option, its opponents concealed from Genentech the

**622**

existence of its rights as a third party beneficiary. This is an interesting allegation because heretofore Genentech always has purported to have secured its third party beneficiary rights in the 1978 option agreement.[4] We believe, however, that Genentech is arguing that the 1978 option agreement initially created its rights and that UC and Lilly hid that fact from Genentech when Lilly opted to exercise its option.

Nevertheless, we are convinced that Genentech's concealment complaints are insufficient to overcome UC's summary judgment motion. Genentech's entire third party beneficiary argument hinges on the rights it allegedly received under the 1978 option agreement. Genentech's allegations that UC and Lilly concealed Lilly's actual exercise of the option agreement—even if true—would not amount to the material change in position Genentech must show vis-a-vis the 1978 option agreement in order to succeed in its third party beneficiary claim.[5] In asking for a denial of summary judgment on this aspect of UC's motion, Genentech apparently asks the Court to assume that had it known that Lilly and UC had exercised the option agreement, it would materially have changed its position based on the exercise of that option.

We believe, however, that Genentech's reliance must be based on the document that purportedly created the third party beneficiary rights. Because Genentech offers no evidence of reliance on that document, we must grant UC's motion for summary judgment on Genentech's third party beneficiary claim.

---

4. Earlier in this litigation, Genentech also had grounded its third party beneficiary claim on the 1980 IPA between UC and the HEW. This Court, however, determined that a statute of limitations problem prevented Genentech from lodging a claim based on the IPA. *See* Entry Granting in Part and Denying in Part Genentech's Motion for Leave to Further Amend Its Amended Complaint; Granting in Part and Denying in Part UC's Motion to Dismiss Counts II–VIII of Genentech's Amended Complaint; and Reinstating Genentech's § 1 Sherman Act Claim Against Lilly at 36–42, Cause Number IP–90–1679–C (S.D.Ind. Nov. 18, 1994).

5. Perhaps Genentech's allegations could support some other type of claim against UC. We note, however, that in the context of the present action, the Federal Circuit limited the scope of Genentech's actions against UC. The court determined that Genentech could defend against UC's infringement charge and could lodge compulsory counterclaims against UC that would be "suitable for recoupment of damages that may be assessed against [Genentech]." *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 948 (Fed.Cir. 1993), *cert. denied,* 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994). Hence, unless the claims arising from Genentech's allegations would constitute compulsory counterclaims, they could not be lodged against UC. In fact, following the Federal Circuit's guidance, this Court earlier dismissed Genentech's claim against UC for breach of a 1980 settlement agreement between the two entities. The Court found that Genentech's attempt to allege facts that would qualify such claim as a compulsory counterclaim came too late. *See* Entry Granting in Part and Denying in Part Genentech's Motion for Leave to Further Amend Its Amended Complaint; Granting in Part and Denying in Part UC's Motion to Dismiss Counts II–VIII of Genentech's Amended Complaint; and Reinstating Genentech's § 1 Sherman Act Claim Against Lilly at 43–45, Cause Number IP–90–1679–C (S.D.Ind. Nov. 18, 1994). It is interesting to note that the 1980 settlement agreement that was the focus of Genentech's previously dismissed breach of contract claim contained a provision stipulating that UC was to inform Genentech if Lilly exercised its option in the 1978 option agreement. Under the terms of the 1980 settlement agreement, if Lilly did exercise its option with UC, the royalties Genentech owed UC under the 1980 settlement agreement were to be reduced. Obviously, the allegations Genentech offers in support its third party beneficiary claim would have been relevant to its claim that UC breached the 1980 settlement agreement.