Filed 10/13/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RYAN WEEDEN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> WILLIAM LEWIS HOFFMAN, <br><br> Defendant and Respondent. | D078112 <br><br><br><br> (Super. Ct. No. 37-2020-00006878-CU-PO-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Cynthia A. Freeland, Judge. Judgment reversed.

Garrett & Tully, Robert Garrett, Ryan C. Squire and Candie Y. Chang for Plaintiffs and Appellants.

Reese Law Group and Joseph M. Pleasant for Defendant and Respondent.

I.

INTRODUCTION

Plaintiffs Ryan and Genevieve Weeden appeal from a judgment entered in favor of defendant William Lewis Hoffman after the trial court granted Hoffman's anti-SLAPP motion with respect to the Weedens' complaint

against Hoffman, which pleaded causes of action for quiet title, slander of title, and cancellation of an instrument.

According to the allegations of the complaint, Hoffman sent the Weedens a letter threatening a forced sale of real property that the Weedens had purchased, based on a judgment lien created when Hoffman recorded an abstract of judgment that he obtained in a long-standing divorce proceeding between Hoffman and his former wife, Pamela Mitchell. The Weedens sought to quiet title to the property by filing this action. In response, Hoffman filed an anti-SLAPP motion, arguing that the conduct underlying the Weedens' claims against him was protected activity under the anti-SLAPP law and the Weedens were unable to demonstrate a probability of prevailing on their claims.

The trial court agreed with Hoffman that the conduct underlying each of the Weedens' claims—Hoffman's recording of a judgment—constituted protected activity. The court further agreed with Hoffman that the Weedens could not demonstrate a probability of prevailing on any of their claims because the litigation privilege provided Hoffman with absolute immunity from liability. The trial court therefore granted Hoffman's anti-SLAPP motion, and, having struck the allegations goes to all three causes of action, entered judgment in favor of Hoffman on the Weedens' complaint.

We conclude that the Weedens' claims arise from protected activity, and that the trial court therefore properly shifted the burden to the Weedens to demonstrate a probability of prevailing on their claims. However, we further conclude that the litigation privilege provides a defense to only one of the three pleaded causes of action. The litigation privilege shields a defendant from liability only for tort damages that are based on litigation-related communications; the Weedens' causes of action for quiet title and

cancellation of an instrument do not seek to hold Hoffman liable for tort damages but, rather, seek to ascertain the interests of the parties with respect to a parcel of real property and to determine the validity of an instrument. The litigation privilege does not shield Hoffman from these claims.

We further conclude that the Weedens have sufficiently demonstrated a probability of prevailing on the merits; the documents attached as exhibits to the complaint demonstrate that the abstract of judgment that Hoffman recorded with the county clerk does not accurately reflect the terms of the judgment entered in the divorce proceeding, thereby undermining the validity of the abstract of judgment. The court therefore erred in granting Hoffman's anti-SLAPP motion with respect to the causes of action for quiet title and cancellation of an instrument. We reverse the judgment and remand the matter for further proceedings in the trial court.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*[1]

1. *Hoffman's initial purchase of the property at issue and early encumbrance of the parcel*

Hoffman and his then wife Pamela Mitchell purchased a parcel of real property located on Glade Place in Escondido, California (the Property) in January 1988. In 1992, Hoffman and Mitchell signed a deed of trust in favor of Hoffman's parents (1992 Deed of Trust), encumbering the Property in order to secure loans in the amount of $204,000.

---

[1] Because we are reviewing an appeal from the trial court's order granting Hoffman's anti-SLAPP motion, we take this factual background from the allegations of the operative complaint, as well as from evidence presented to the court with respect to the anti-SLAPP motion.

3

Hoffman's father died in 1994, and Hoffman's mother executed an affidavit of death of joint tenants in January 1995. In January 1995, Hoffman's mother transferred and assigned the 1992 Deed of Trust to her trust, the Catherine E. Hoffman Revocable Living Trust. Hoffman's mother died in May 1995, and Hoffman became the sole trustee and beneficiary under his mother's trust. Hoffman, as trustee of his mother's trust, recorded a full reconveyance of the 1992 Deed of Trust in July 1996, thereby removing the lien from the Property.

2. *Hoffman and Mitchell's divorce and Property-related activities*

Hoffman and Mitchell began divorce proceedings in an action titled *William Lewis Hoffman v. Pamela Ann Mitchell*, case No. DN157807 (the Divorce Action) in 2009.

In May 2014, Hoffman signed a deed of trust in the principal amount of $100,000 securing his one-half interest in the Property in favor of his divorce attorney. In June 2014, while the Divorce Action was still pending, Hoffman attempted to reinstate the 1992 Deed of Trust by recording a rescission of the full reconveyance that he had recorded in 1996. The intended effect was apparently to reinstate the 1992 Deed of Trust in favor of the Catherine E. Hoffman Trust, of which Hoffman was the sole trustee and beneficiary.

In July 2014, Mitchell executed a severance of joint tenancy in order to sever Hoffman's and Mitchell's joint tenancy and create a tenancy in common.

On October 22, 2014, Hoffman executed and recorded a document titled "Rescission of Rescission of Reconveyance" (boldface and some capitalization omitted), in which he asserted that he was "rescind[ing] the Re[s]cission of Reconveyance" that he had recorded in June 2014. It appears that Hoffman was attempting to reverse the effect of his June 2014 recording of a rescission

4

of his 1996 full reconveyance of the 1992 Deed of Trust, thereby once again removing from the Property the lien from the 1992 Deed of Trust.

Approximately a week later, on October 29, 2014, Hoffman and Mitchell entered into a stipulated judgment (the Stipulated Judgment) involving the division of assets, including the Property. With respect to the Property, Hoffman and Mitchell agreed that Mitchell would continue to reside in the Property until it was sold, the parties would list it for sale at $699,000, Mitchell would receive the first $275,000 from the sales proceeds, and Hoffman would "receive all remaining proceeds after the normal costs of sale and [Mitchell] are paid." The Stipulated Judgment further provided that Hoffman would "take all actions necessary to provide clear title to the Glade Place residence so that it can be sold." The Stipulated Judgment did not include a monetary award to Hoffman.

3. *Mitchell's quiet title action against Hoffman and Hoffman's divorce attorney's trustee sale*

Hoffman initiated foreclosure of the Property by recording a notice of default based on the 1992 Deed of Trust in December 2015. Hoffman recorded a notice of trustee's sale in March 2016.

In response to Hoffman's attempt to nonjudicially foreclose on the Property, on April 1, 2016, Mitchell filed a civil action against Hoffman to enjoin Hoffman's foreclosure efforts and for declaratory relief (the Mitchell Quiet Title Action). On April 5, 2016, the trial court in the Mitchell Quiet Title Action issued a temporary restraining order enjoining Hoffman from proceeding with the trustee's sale of the Property. The court set a further hearing for April 29.

On April 8, 2016, while the temporary restraining order was in effect, Hoffman moved forward with and completed a foreclosure sale, and

5

proceeded to record a trustee's deed upon sale transferring title to the Property to the "Catherine E. Hoffman Trust."

According to the complaint in this matter, the court in the Mitchell Quiet Title Action issued an order rendering void and unenforceable the trustee's sale that Hoffman purported to undertake on April 8, 2016. On May 12, 2016, the court issued a preliminary injunction enjoining Hoffman from taking action to conduct any sale of the Property.

In July 2016, CNA Foreclosure Services, Inc., serving as the trustee under the deed of trust secured by Hoffman's one-half interest in the Property, recorded a notice of default based on Hoffman's failure to pay his divorce attorney. CNA Foreclosure Services, Inc. recorded a notice of sale in October 2016.

CNA Foreclosure Services, Inc. conducted a trustee's sale in November 2016, and granted to Glade Place, LLC, via a trustee's deed, Hoffman's half interest in the Property as a tenant in common, thereby foreclosing on the half interest in the Property that Hoffman had encumbered by the deed of trust in favor of his divorce attorney.

After a trial, in April 2018, the trial court in the Mitchell Quiet Title Action issued a statement of decision, finding in favor of Mitchell and Glade Place, LLC[2]. The court determined that the 1992 Deed of Trust and the Catherine E. Hoffman Trust had been extinguished as of Hoffman's mother's death in May 1995, and that the 2016 trustee's deed upon sale resulting from Hoffman's foreclosure was void. The court further found that Hoffman's

---

[2] It appears from the statement of decision that at some point, Glade Place, LLC was added as an additional plaintiff in the Mitchell Quiet Title Action.

6

remaining one-half interest in the Property had been sold to Glade Place, LLC, and that Glade Place, LLC was a "bona fide purchaser."

On April 30, 2018, the court in the Mitchell Quiet Title Action entered judgment quieting title to the Property in favor of Mitchell and Glade Place, LLC and against both Hoffman as an individual and as the trustee of the Catherine E. Hoffman Trust.

4. *Hoffman obtains an abstract of judgment ostensibly based on the 2014 stipulated judgment in the Divorce Action*

Approximately two months after judgment in the Mitchell Quiet Title Action was entered, Hoffman recorded the Stipulated Judgment in the Divorce Action. Hoffman subsequently prepared, and submitted to the trial court for filing, an abstract of judgment (the 2018 Abstract of Judgment) that erroneously indicated that Hoffman had obtained a money judgment in the amount of $699,000 against Mitchell. The court filed the erroneous abstract of judgment and Hoffman recorded it. In a declaration submitted in connection with his anti-SLAPP motion, Hoffman admitted that he had "prepared" the 2018 Abstract of Judgment and submitted it to the trial court for filing; he attested that he "believed the court would review it and would only issue it if the contents were acceptable and in compliance with its jurisdiction and the law."

5. *The Weedens' purchase of the Property*

Glade Place, LLC quitclaimed its interest in the Property to Richard R. Leuthold and Janet S. Leuthold, as trustees of the R&J Trust, for no consideration, on October 1, 2018.

The Weedens purchased the Property from Mitchell and the Leutholds, as trustees of the R&J Trust, in May 2019.

7

6. *Hoffman's conduct subsequent to the Weedens' purchase of the Property*

In September 2019, Hoffman, through an attorney, sent a letter to the Weedens in which he asserted an interest in the Property, based on the judgment lien on the property that was created by Hoffman's recording of the 2018 Abstract of Judgment. Hoffman encouraged the Weedens to contact their title insurer so that they could make a claim to satisfy what Hoffman maintained was currently a lien of more than $1,000,000 on the Property. Hoffman threatened that if the Weedens or their title insurer did not contact Hoffman's attorney within a week, Hoffman would "begin the procedures to obtain a writ of execution to sell your property to pay [the] $1,033,184.95 lien."

B. *Procedural background*

The Weedens filed a complaint against Hoffman on February 6, 2020, alleging claims for quiet title, cancellation of an instrument, and slander of title.

In response to the complaint, Hoffman filed an anti- SLAPP motion. The Weedens filed an opposition, supporting it with the declarations of Donald E. Leohardt and Ryan Weeden. The opposition included a request for judicial notice of various documents, many of which were recorded with the San Diego County Recorder's Office, such as the 1988 grant deed, various deeds of trust, the document severing the joint tenancy of Mitchell and Hoffman in the Property, as well as documents filed in the Divorce Action and in the Mitchell Quiet Title Action.

On August 7, 2020, the trial court heard Hoffman's anti- SLAPP motion, denied the parties' respective requests for judicial notice, and granted Hoffman's anti-SLAPP motion. The court concluded that Hoffman had

"established that all three causes of action arise from his protected activity of recording an abstract of judgment and are thus subject to C[ode of] C[ivil] P[rocedure] §425.16's provisions." The court further concluded that the plaintiffs could not demonstrate a probability of prevailing because the litigation privilege applies to bar all three causes of action. The court therefore struck all of the causes of action in the complaint, and invited Hoffman to "bring a motion for reasonable attorney's fees and costs in the normal course."

The trial court entered judgment in favor of Hoffman on September 29, 2020. The judgment in the record on appeal dismisses the complaint with prejudice. It does not include an award of attorney fees.

Out of an abundance of caution, the Weedens filed timely notices of appeal from both the trial court's order granting Hoffman's anti-SLAPP motion as well as from the judgment.

III.

DISCUSSION

A.  *The law governing anti-SLAPP motions*

"Section 425.16 provides . . . that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) 'As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes[ among other things]: (1) any written or oral statement or writing made before a legislative, executive, or

9

judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .' (*Id.*, subd. (e).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 87–88 (*Navellier*).)

Analyzing an anti-SLAPP motion involves two steps. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.) " 'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.]" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) In determining whether the plaintiff has carried this burden, the court considers "the pleadings . . . and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).) The second step has been described as a " 'summary-judgment-like procedure' " during which "[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385 (*Baral*).)

"Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra*, 29 Cal.4th at p. 89.)

10

We review an order granting or denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326.) We therefore engage in the same two-step process that the trial court undertakes in assessing an anti-SLAPP motion. (See *Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1651–1652.)

B. *Prong one: "protected activity" under the anti-SLAPP statute*

The Weedens first contend that the trial court erred in concluding that their causes of action arise from protected activity, as defined by the anti-SLAPP law.

A defendant satisfies the first prong of the anti-SLAPP analysis by demonstrating that the allegedly injurious conduct falls within one of four categories of protected activity described in Code of Civil Procedure section 425.16, subdivision (e), and that the claim asserted by the plaintiff arises from that conduct. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) In other words, "the moving party must establish both (1) that its act constituted protected activity and (2) the opposing party's cause of action *arose* from that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130, italics added.)

Code of Civil Procedure section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a

11

place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

"A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit. '[T]he critical point is whether the plaintiff's cause of action itself *was based on an act in furtherance of the defendant's right of petition or free speech.*'" (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568, some italics added.)

1. *The causes of action as alleged in the complaint*

The Weedens' complaint sets out three causes of action: (1) quiet title; (2) cancellation of an instrument; and (3) slander of title. With respect to the cause of action to quiet title, the Weedens allege:

> "33. [O]n or about August 6, 2018, Hoffman caused the 2018 Abstract of Judgment to be recorded purporting to create a lien against the Property for a monetary judgment that did not exist, because the 2014 Judgment and Stipulated Judgment in the <u>Hoffman</u> v. <u>Mitchell</u> divorce action never included a monetary award for damages in favor of Hoffman against Mitchell.
>
> "34. Plaintiffs are informed and believe and, based thereon, allege that Hoffman had no good cause to record the 2018 Abstract of Judgment other than to purposefully cloud title to the Property, and that such actions were done maliciously to interfere with the rights and privileges of the rightful owners of the Property.
>
> "35. Plaintiffs seek to quiet title against any adverse claims of Defendant[ ] that Plaintiffs own the entire fee

12

title interest in the Property free of any title interest claimed by Defendant[ ].

"36.    Plaintiffs seek a judicial declaration quieting title to their interest in the Property, declaring the 2018 Abstract of Judgment void as a lien against the Property and declaring Plaintiffs hold the entire fee title interest in the Property free of any title interest claimed by Defendant[ ], as of May 24, 2019, the date of the recording of the Grant Deed in the Official Records of the San Diego County Recorder's Office . . . ."

In the cause of action for cancellation of an instrument, the Weedens allege:

"38.    [O]n or about August 6, 2018, Hoffman caused the 2018 Abstract of Judgment to be recorded purporting to create a lien against the Property for a monetary judgment that did not exist, because the 2014 Judgment and Stipulated Judgment in the Hoffman v. Mitchell divorce action never included a monetary award for damages in favor of Hoffman against Mitchell.

"39.    Plaintiffs are informed and believe and, based thereon, allege that Hoffman had no good cause to record the 2018 Abstract of Judgment other than to purposefully cloud title to the Property, and that such actions were done maliciously to interfere with the rights and privileges of the rightful owners of the Property.

"40.    The 2018 Abstract of Judgment purports to wrongfully encumber the Property with a monetary judgement that does not exist.

"41.    Plaintiffs have reasonable apprehension that, if left outstanding, the 2018 Abstract of Judgment may cause serious injury to Plaintiffs.  If left outstanding, Defendant[ ] may wrongfully seek to execute a writ of execution or improperly undertake other measures to exercise lien rights against the Property, and the 2018 Abstract of Judgment may impede Plaintiffs' ability to

13

amongst other things encumber/use as collateral, rent or sell the Property.

"42.     Plaintiffs are entitled to an order declaring the 2018 Abstract of Judgment cancelled."

In the slander of title cause of action, the Weedens allege:

"44.     Plaintiffs rightfully acquired the entire fee title interest in the Property by way of the 2019 Grant Deed . . . , recorded on May 24, 2019 in the Official Records of the San Diego County Recorder's Office as Document #2019-0199995, and Plaintiffs are the rightful fee owners of the Property.

"45.     Plaintiffs are informed and believe and, based thereon, allege that, on or about August 6, 2018, Hoffman caused the 2018 Abstract of Judgment to be recorded purporting to create a lien against the Property for a monetary judgment that did not exist, because the 2014 Judgment and Stipulated Judgment in the Hoffman v. Mitchell divorce action never included a monetary award for damages in favor of Hoffman against Mitchell.

"46.     Plaintiffs are informed and believe and, based thereon, allege that because the 2014 Judgment and Stipulated Judgment in the Hoffman v. Mitchell divorce action never included a monetary award for damages in favor [of] Hoffman against Mitchell, Defendant[ ] had neither the justification nor the privilege to record and thereby publish the false 2018 Abstract of Judgment (with the only . . . purpose of recording and publishing such false lien being to cloud title to the Property for any purchaser such as Plaintiffs), and that such actions were done maliciously to interfere with the rights and privileges of the rightful owners of the Property.

"47.     The 2018 Abstract of Judgment continues to disparage Plaintiffs' title to the Property.  Such statements cloud Plaintiffs' title to the Property, endanger Plaintiffs'

14

interest and may impede Plaintiffs' ability to amongst other things encumber/use as collateral, rent or sell the Property. In fact, Defendant[ ] ha[s] threatened to commence with a writ of execution to sell Plaintiffs' Property to pay a $1,033,184.95 lien based on the 2018 Abstract of Judgment.

"48. As a result of Defendant['s] foregoing actions, Plaintiffs have been damaged in an amount according to be proved at trial (and in excess of the jurisdictional threshold of this Court) including attorneys' fees and costs necessary to remove the cloud on title created by the recording of the 2018 Abstract of Judgment. Since such actions were undertaken maliciously by Defendant[ ], Plaintiffs are entitled to punitive and exemplary damages against Defendant[ ]."

2. *Analysis*

The Weedens concede that the " 'act' of obtaining and recording [an] [a]bstract [of judgment] as a real property lien is protected activity."[3] The

---

[3] Code of Civil Procedure section 425.16, subdivision (e)(2) includes protection for "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." The filing of a lawsuit is thus an exercise of a party's constitutional right of petition under the anti-SLAPP law. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.) Further, courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) As a result, "protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537), as well as to actions taken to enforce a judgment (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062–1065 (*Rusheen*)). Thus, a "defendant['s] acts of obtaining an abstract of judgment and recording it as a real property lien

15

Weedens argue, however, that the mere assertion of a " 'claim' of an interest in real property is not" a protected activity under the anti-SLAPP law. They analogize the distinction between an individual's conduct in obtaining and recording an abstract of judgment, which they concede is a protected activity, and an individual's conduct in claiming an interest in real property, which they argue is not a protected activity, to the distinction between the "act" of filing a lawsuit, which is a protected activity, and the party's assertion of the claims underlying those raised in the lawsuit, which does not necessarily constitute protected conduct. The Weedens also suggest that the distinction that they are trying to draw is similar to that between the "act of filing an unlawful detainer action," which they concede "is a protected activity under section 425.16," and a party's conduct in "terminating a lease," which, they assert, is not protected activity. The Weedens argue that "while [their] complaint may have been triggered by Hoffman's act of recording the Abstract [citation] and the Abstract may be evidence in support of the Weedens' claims [citation], the Abstract itself is not the wrong complained of by the Weedens. Rather, the Weedens are challenging Hoffman's claim of interest in the Property, which arose out of his wrongful reliance on the erroneous Abstract."

Even if the Weedens are correct in their contention that a party's assertion of a claim of an interest in real property is not protected conduct under the anti-SLAPP law, a review of the allegations of the complaint demonstrates that the only conduct referred to in each of the three claims in the complaint, and therefore the only conduct from which the Weedens' claims can possibly arise, is Hoffman's recording of the 2018 Abstract of

---

f[a]ll within the categories of section 425.16, subdivision (e)." (*O'Neil-Rosales v. Citibank (South Dakota) N.A.* (2017) 11 Cal.App.5th Supp. 1, 6.)

Judgment. Specifically, paragraphs 33, 38, and 45 set forth what Hoffman is alleged to have done that gives rise to the quiet title, cancellation of instrument, and slander of title causes of action; each of those paragraphs complains about Hoffman's recording of the 2018 Abstract of Judgment, which had the effect of creating a judgment lien against the Property in the amount of $699,000.[4] None of the causes of action alleges, as the conduct upon which the claims are based, Hoffman's mere assertion of a claim of an interest in the Property. We therefore conclude that Hoffman has demonstrated that the conduct about which the Weedens complain, i.e., the conduct forming the basis of all three of the Weedens' causes of action, is Hoffman's conduct in obtaining and recording the 2018 abstract of judgment, which the Weedens concede is protected activity under Code of Civil Procedure section 425.16, subdivision (e)(2). Because Hoffman has met his burden with respect to the first prong of the anti-SLAPP analysis, we next consider whether the Weedens have demonstrated a probability of prevailing on one or more of their causes of action.

C. *Prong two: probability of prevailing*

The Weedens contend that, even if the trial court was correct in concluding that their claims arise from protected conduct under the first prong of the anti-SLAPP analysis, the court erred in concluding that they failed to demonstrate a probability of prevailing on their claims. The Weedens contend that Hoffman cannot rely on the litigation privilege because

---

4    A judgment lien on real property is not created by the mere entry of a judgment in a court case, but rather, is created by the act of recording an abstract of a money judgment in the office of the county recorder of the county where the real property is located. (Code Civ. Proc., § 697.310, subd. (a); see *Behniwal v. Mix* (2007) 147 Cal.App.4th 621, 635 ["A judgment lien is not created until an abstract of judgment has been filed"].)

" 'the privilege does not protect illegal conduct that results in damages unrelated to the use of the fruits of that conduct in litigation.' " According to the Weedens, they have sufficiently demonstrated that Hoffman's conduct in obtaining the 2018 Abstract of Judgment was fraudulent, and therefore illegal, and that Hoffman is thus precluded from relying on the litigation privilege as a defense to their action. The Weedens argue in the alternative that the litigation privilege does not apply to non-tort claims, such as the claims underlying their quiet title and cancellation of instrument causes of action.

1. *Additional standards relevant to the second prong of the anti-SLAPP analysis*

In undertaking the second step of the anti-SLAPP analysis, we do not weigh evidence or resolve conflicting factual claims. Instead, we limit our inquiry to whether the plaintiffs have stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment if their evidence is credited. A court accepts the plaintiff's evidence as true and evaluates a defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. (*Baral, supra*, 1 Cal.5th at pp. 384–385.) "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 949.) "[C]laims with the requisite *minimal merit* may proceed." (*Navellier, supra*, 29 Cal.4th at p. 94, italics added.)

At this stage, a plaintiff must show that any asserted defenses are inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate such defenses. (*Birkner v. Lam* (2007)

18

156 Cal.App.4th 275, 285.)  The litigation privilege, which Hoffman raised in his anti-SLAPP motion briefing, is a defense that may be considered with respect to the second prong of the anti-SLAPP analysis.  (*Ibid.*)

   2.   *The litigation privilege*

The litigation privilege "generally protects from tort liability any publication made in connection with a judicial proceeding."  (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952.)  The privilege is codified in Civil Code section 47, subdivision (b), and it " 'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).)  The intention of the party making the privileged communication is irrelevant because the privilege "is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' " (*Ibid.*)

   " 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently *by derivative tort actions.*' " (*Action Apartment, supra*, 41 Cal.4th at p. 1241, italics added.)  To achieve this purpose, the litigation privilege is given a broad interpretation.  (*Ibid.*)  "Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and *all torts except malicious prosecution.* [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, italics added.)

As indicated by these authorities, the litigation privilege precludes liability for damages in tort, and generally is not extended to liability based on a claim for breach contract, for example. (See *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 773; see also *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1486 [The litigation privilege " 'is generally described as one that precludes liability in tort, not liability for breach of contract' "; " '[w]hether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege' "].)

3. *The Weedens' reliance on an "illegality" exception to the litigation privilege lacks merit*

The Weedens contend that Hoffman may not rely on the litigation privilege as a complete defense to their claims against him because his conduct was illegal. However, they have identified no "illegality" exception to application of the litigation privilege, generally. Rather, what the Weedens seem to be suggesting in this portion of their argument is that, despite what their complaint alleges, their claims do not actually rely on Hoffman's conduct in recording the 2018 Abstract of Judgment. For example, the Weedens argue that their "lawsuit seek[s] to redress Hoffman's . . . underlying misconduct," and not his act in recording the 2018 Abstract of Judgment, and that "the damages asserted by the Weedens" do not "rest[ ] on Hoffman's recording of the Abstract," but instead are related solely to his "wrongful claim of an interest in the Property."

As we previously explained in part III.B.2, *ante*, the allegations of the complaint do not support this contention. We therefore reject the Weedens' argument that the litigation privilege is inapplicable to all three of their

20

pleaded causes of action on the ground that there is an "illegality exception" to its application.[5]

    4. *The litigation privilege does not operate to bar the Weedens' quiet title action or to their corresponding claim seeking to cancel an instrument*

Although the Weedens' initial argument is unavailing, we agree with their assertion that the litigation privilege does not provide a defense to a cause of action that, by its nature, does not seek to impose *tort liability for damages* on a defendant based on his or her litigation related publications. We further conclude that at least two of the pleaded causes of action that the Weedens assert—the quiet title claim and the claim for cancellation of an instrument—are not subject to the litigation privilege.

As noted, the litigation privilege operates to preclude liability for tort damages based on a publication or broadcast made in any judicial proceeding: " 'Although originally enacted with reference to [the tort of] defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and *all torts except malicious prosecution.* [Citations.]' " (*Rusheen, supra*, 37 Cal.4th at p. 1057, italics added.) Other courts have indicated that *non-tort damage remedies* remain

---

5    To the extent that counsel for the Weedens attempted to raise a question during oral argument as to whether Hoffman's conduct was illegal as a matter of law pursuant to the authority of *Flatley v. Mauro* (2006) 39 Cal.4th 299, which, if true, would preclude a finding that the conduct is protected under the first prong of the anti-SLAPP analysis, this argument was not raised in the Weedens' briefing on appeal and we will therefore not consider it. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 232, fn. 6 ["We need not consider points raised for the first time at oral argument"].) The only argument as to illegality that the Weedens raised in their briefing was as to the second prong of the anti-SLAPP analysis, as discussed in the text.

available to litigants even where a claim for tort damages is precluded by the litigation privilege.  For example, in *Rusheen, supra*, 37 Cal.4th at page 1064, the Supreme Court concluded that although an abuse of process claim—a tort, was precluded by the litigation privilege, the plaintiff had "adequate alternative remedies" to address "the allegedly wrongful conduct."  *Rusheen* involved an abuse of process claim, brought in a cross-complaint by Rusheen against an attorney who had been involved in proceedings in which the attorney's clients had initiated proceedings against Rusheen in an attempt to remove Rusheen from a home that the clients had purchased from Rusheen's father.  (*Id.* at pp. 1052–1053.)  The attorney filed an anti-SLAPP motion as to the cross-complaint and argued that Rusheen's abuse of process claim was barred by the litigation privilege.  (*Id.* at p. 1054.)  The trial court agreed and granted the anti-SLAPP motion.  (*Ibid.*)  In affirming the trial court's granting of the anti-SLAPP motion, the Supreme Court concluded that there was no reasonable probability that Rusheen's abuse of process claim could prevail because the litigation privilege was a complete defense to that claim.  (*Id.* at p. 1065.)

The Supreme Court noted, however, that despite the unavailability of a tort remedy for Rusheen, a party seeking relief from the conduct about which Rusheen was complaining would have other options available:  "[T]he denial of an abuse of process claim is mitigated by the fact that Rusheen had adequate alternative remedies.  Indeed, Rusheen exercised one of those remedies by successfully moving to set aside the default judgment . . . . *There were additional non[-]tort remedies* for the allegedly wrongful conduct: moving to recall and quash the writ of execution [citations]; posting an undertaking or seeking a writ of supersedeas to thwart enforcement efforts [citation]; or filing a claim of exemption from execution [citation]."  (*Rusheen,*

22

*supra*, 37 Cal.4th at p. 1064.) Similarly, where a judgment has been " 'procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, not to sue in tort,' " given that a tort remedy is precluded by the litigation privilege. (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 834; see *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1146–1147 [same].)

Recently, another panel of this court indicated, in dicta, that the litigation privilege does not apply to equitable claims for declaratory or injunctive relief, such as a claim to quiet title. After concluding that a plaintiff had failed to demonstrate a probability of prevailing on a cause of action for slander of title because the plaintiff was unable to establish that the litigation privilege did not bar that cause of action, the court in *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 437 (*RGC Gaslamp*) added that "not *every* cause of action based on the recordation of an invalid . . . lien will be barred by the litigation privilege." The *RGC Gaslamp* court explained, "Courts have long recognized that upon service of preliminary notice or upon later recordation of a mechanic's lien, a project owner may seek declaratory and injunctive relief challenging the validity of the lien. [Citations.] . . . We have found no authority to suggest that these types of actions would be barred by the litigation privilege, which generally precludes derivative *tort* liability. [Citation.]" (*Ibid.*) The *RGC Gaslamp* court further indicated that precisely the approach taken by the Weedens in this case—an action for quiet title and cancellation of instrument—is not barred by the litigation privilege: "We in no way suggest that quiet title and declaratory relief actions are in all instances barred [by the litigation privilege]. Rather, those claims were rendered moot here after [the defendant] released the fourth mechanic's lien. When [the defendant] filed its anti-SLAPP motion, an actual controversy remained solely as to the

23

slander of title cause of action. Because *this* tort claim was barred by the litigation privilege, RGC could not establish the minimal merit of its action at prong two of the anti-SLAPP inquiry." (*Id.* at p. 438.)[6]

A cause of action to quiet title is clearly not a tort claim, and it does not seek to hold a defendant liable for damages. Rather, "actions to quiet title, like true declaratory relief actions, are generally equitable in nature." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 25, citing *Strauss v. Summerhays* (1984) 157 Cal.App.3d 806, 812.) "A quiet title action is a statutory action that seeks to declare the rights of the parties in realty. [Citations.] ' " 'The object of the action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.' " ' [Citation.] The purpose of a quiet title action is to determine any adverse claim to the property that the defendant may assert, and to declare and define any interest held by the defendant, ' "so that the plaintiff may have a decree finally adjudicating the extent of his own interest in the property in controversy." ' [Citation.]" (*Robin v. Crowell* (2020) 55 Cal.App.5th 727, 740 (*Robin*).)

As is clear from the complaint in this action, the Weedens are not seeking to hold Hoffman liable for damages in their cause of action seeking to quiet title to the Property. The Weedens state in the complaint in paragraph 36, under the heading of the quiet title cause of action, that they are

---

6      At least one other court has similarly noted in dicta that its holding that a plaintiff's claim for slander of title based on a condominium homeowners association's publication of an assessment lien was barred by the litigation privilege "does not prevent those who are subject to homeowners' assessment liens from seeking declaratory relief or filing quiet title actions to contest the validity of liens that are improper." (*Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 571 (*Wilton*).)

"*seek[ing] a judicial declaration* quieting title to their interest in the Property, *declaring* the 2018 Abstract of Judgment void as a lien against the Property and *declaring* Plaintiffs hold the entire fee title interest in the Property free of any title interest claimed by Defendant[ ], as of May 24, 2019, the date of the recording of the Grant Deed in the Official Records of the San Diego County Recorder's Office . . . ." (Italics added.)

As the authorities discussed above suggest, the law does not leave individuals who are negatively affected by the recording of an allegedly invalid judgment, or other questionable claim to an interest in their property, with no remedy. If Hoffman were correct that litigation privilege could be used to bar claims seeking declaratory relief—such as claims to quiet title—where a defendant has recorded a judgment of dubious validity, bona fide purchasers like the Weedens would be left without *any* remedy to clear title to their property. We reject such a result. Consistent with the *RGC Gaslamp* court's comments, and those of other authorities, we conclude that the litigation privilege does not bar the Weedens' cause of action to quiet title.[7]

---

[7] Hoffman asserts that "[t]he *act* of recording of an abstract is covered by the litigation privilege," citing *O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134. Hoffman's reliance on *O'Keefe* is unavailing. The question at issue here is *not* whether the conduct underlying the causes of action is of the type that is privileged. Rather, the question at issue is a preliminary question, i.e., whether the plaintiffs are attempting to hold the defendant *liable for damages in tort* based on a "publication or broadcast" made in the course of a "judicial proceeding" (Civ. Code, § 47, subd. (b)). *O'Keefe* involved causes of action for abuse of process and slander of title, which are both tort claims. (*O'Keefe*, at p. 132.) It is therefore unsurprising that the *O'Keefe* court concluded that the litigation privilege operated as a complete defense to those causes of action where the conduct on which they were based was a defendant's recording of an abstract of judgment in a county recorder's office. (*Id.* at p. 135.) In fact, the *O'Keefe* court even expressly made the point that the "plaintiff *has no tort remedy* against [the defendants]." (*Ibid.*, italics added.)

The same analysis applies to the Weedens' cause of action in which they assert a claim for cancellation of a written instrument. A claim for cancellation of written instrument is an equitable claim that is codified in Civil Code section 3412.[8] This claim allows a plaintiff to obtain cancellation of an instrument that creates a cloud on the plaintiff's title. (See Civ. Code, § 3412; see *Robin, supra*, 55 Cal.App.5th 740–741.) Such a claim, by its definition, does not seek to hold the defendant liable for tort damages. The Weedens are seeking to quiet title and also to have the instrument under which Hoffman claims an interest in the property declared void; these comprise a single cause of action. (See *Parsons v. Weis* (1904) 144 Cal. 410, 414 ["The complaint states only a single cause of action—viz., to quiet the plaintiff's title as against the defendant to the land therein described, and, as incidental thereto, for the purpose of making the judgment more effective, to have the instrument under which the defendant asserts title declared void"]; see also *Beronio v. Ventura County Lumber Co.* (1900) 129 Cal. 232, 235 ["The complaint presents only a single cause of action, viz., the enforcement of the plaintiff's right to the premises in question against the unlawful claim of the defendant thereto. As a portion of the remedy for the enforcement of that right it seeks the annulment of the sheriff's deed, but a plaintiff may frequently be entitled to several species of remedy for the enforcement of a single right"].) Therefore, the litigation privilege also does not preclude the Weedens' claim for cancellation of an instrument.

---

8      Civil Code section 3412 provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

The same cannot be said, however, of the Weedens' claim for slander of title. In contrast to the claims for quiet title and cancellation of instrument, the Weedens' claim for slander of title *does* seek to hold Hoffman liable in tort for damages: "The elements of the [slander of title] tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030.) The complaint itself makes clear that the Weedens are seeking to hold Hoffman liable for tort damages by asserting that the Weedens have suffered damages as a result of Hoffman's conduct with respect to the recording of the 2018 Abstract of Judgment. As we have previously explained, the Weedens' request for damages in their slander of title claim is based on their allegation that Hoffman slandered title to the Property not only by obtaining the 2018 Abstract of Judgment, but also by creating a judgment lien on the Property *by recording the 2018 Abstract of Judgment with the county clerk.* Given that slander of title is a tort claim, it is not surprising that a slander of title claim has been held to be subject to a litigation privilege defense. (See, e.g., *Wilton, supra*, 18 Cal.App.4th at p. 571. [plaintiff's claim for slander of title based on condominium homeowners association's publication of an assessment lien was barred by the litigation privilege]; *RGC Gaslamp, supra*, 56 Cal.App.5th 413, 436 [plaintiff failed to demonstrate that "the litigation privilege was inapplicable as a matter of law to its slander-of-title claim"].) Because the litigation privilege provides Hoffman a complete defense to the Weedens' claim for slander of title, we conclude that the trial court properly struck the allegations of the complaint that set out a claim for slander of title based on Hoffman's protected activity in recording the 2018 Abstract of Judgment.

27

5. *The Weedens have demonstrated the requisite minimal merit necessary to overcome an anti-SLAPP motion with respect to their causes of action for quiet title and cancellation of an instrument*

We next consider whether the Weedens have met their burden with respect to the second prong of the anti-SLAPP statute, apart from demonstrating that the litigation privilege does not bar all of their claims.[9] As we explain, the Weedens have stated a legally sufficient claim with respect to the 2018 Abstract of Judgment through their quiet title and cancellation of instrument claims, and they have also made a prima facie factual showing sufficient to sustain a favorable judgment in their favor, based on the exhibits attached to their complaint and to the declarations that they submitted, which we must credit as evidence for purposes of the anti-SLAPP motion.[10]

---

[9] Because the trial court concluded that the litigation privilege operated as a complete bar to all three of the Weedens' causes of action, the court did not further analyze whether the Weedens had otherwise demonstrated that their claims had the requisite "minimal merit" (*Wilson, supra*, 7 Cal.5th at p. 884, internal quotations omitted) necessary to overcome the anti-SLAPP motion.

[10] The Weedens also contend that the trial court erred in not granting their request for judicial notice of a number of recorded documents and court records from the Divorce Action. In its order granting Hoffman's anti-SLAPP motion, the trial court stated, "The parties' respective requests for judicial notice are denied because the court did not rely on that information in resolving the motion. [Citation.]"
As Hoffman points out, however, and as our review of the record confirms, all of the documents that the Weedens identify in their briefing as not having been judicially noticed are documents that are already in the record through means other than their request for judicial notice; the documents are either attached as exhibits to the complaint or are attached as exhibits to declarations submitted by the Weedens. These documents were therefore before the trial court and are part of the record on appeal. We

28

" 'To prevail on a claim to cancel an instrument, a plaintiff must prove (1) the instrument is void or voidable due to, for example, fraud, and (2) there is a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alternation of one's position.' " (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1193–1194.) In order to quiet title, a plaintiff's complaint "must include" all of the following as elements of the claim: (1) a description of the property that is the subject of the action; (2) the title of the plaintiff as to which a determination is sought and the basis of the title; (3) "[t]he adverse claims to the title of the plaintiff against which a determination is sought"; (4) the date as of which the determination is sought; and (5) a prayer for the determination of plaintiff's title "against the adverse claims." (Code Civ. Proc., § 761.020, subds. (a)–(e).)

The Weedens seek to cancel the 2018 Abstract of Judgment on the ground that it falsely states that Hoffman obtained a money judgment against Mitchell and its filing permitted Hoffman to fraudulently create a judgment lien on the Property by recording the fraudulently obtained 2018 Abstract of Judgment. The Weedens' quiet title cause of action is also based on Hoffman's recording the allegedly fraudulently obtained 2018 Abstract of Judgment, in that Hoffman's recording of the 2018 Abstract of Judgment created his adverse claim to the Property—i.e., the judgment lien on the Property. The documents in the record demonstrate, on their face, that there is a significant question as to the validity of the 2018 Abstract of Judgment that Hoffman recorded, and if the 2018 Abstract of Judgment is invalid, that would undermine the validity of the judgment lien that was created with respect to the Property upon the recordation of that abstract.

---

reject as moot the Weedens' argument that the trial court erred in denying their request for judicial notice.

An abstract of judgment that asserts the existence of a judgment of a certain monetary amount when there is no such judgment does not comply with Code of Civil Procedure section 674.[11] An abstract of judgment obtained fraudulently and not in compliance with Code of Civil Procedure section 674 because it does not accurately reflect "[t]he amount of the judgment," may be cancelled or otherwise voided by a court. (See *Sanai v. Saltz* (2009) 170 Cal.App.4th 746, 759, fn. 7 [an abstract obtained by a plaintiff was "recalled and quashed" where court found that the plaintiff had " 'fraudulently obtained' " an abstract of judgment for a monetary amount that had not been awarded and " 'wrongfully caused this Abstract of Judgment to be recorded with the Los Angeles County Recorder's Office' "]; see also *In re Michael S.* (2007) 147 Cal.App.4th 1443, 1456 [in dicta, addressing an abstract obtained by a county that "should never have been applied for or issued in the first place in any amount greater than $25,000 because it was that figure which was the true 'total amount of judgment' entered against [a juvenile's mother] as 'judgment debtor' " and stating that "an abstract of judgment cannot indicate a liability on the part of a judgment debtor in excess of the judgment creating that liability in the first place" (italics omitted)].)

The Stipulated Judgment in the Divorce Action between Hoffman and Mitchell plainly did not award Hoffman a money judgment in the amount of $699,000. Rather, it provided a means for dividing the proceeds from the sale of a jointly-owned asset, the Property, between Hoffman and Mitchell, and required that the Property be sold. The 2018 Abstract of Judgment that

---

11 An abstract of judgment "shall contain . . . [¶] . . . [¶] (5) The amount of the judgment or decree as entered or as last renewed." (Code Civ. Proc., § 674, subd. (a).)

Hoffman procured, which indicates that Hoffman obtained a money judgment against Mitchell in the amount of $699,000, does not reflect the actual judgment entered in the Divorce Action. The 2018 Abstract of Judgment thus does not meet all of the applicable statutory requirements of Code of Civil Procedure section 674. If credited as accurate and true, these documents support the Weedens' allegations that Hoffman fraudulently obtained and recorded the 2018 Abstract of Judgment, and further suggest that the trial court entered it erroneously and without any valid basis.[12] We therefore conclude that the Weedens have met their burden to demonstrate the minimal merit necessary on the second prong of the anti-SLAPP analysis as to their claims for quiet title and cancellation of instrument. The trial court's order concluding otherwise is erroneous and must be reversed.

D. *Attorney fees*

The Weedens contend that an order awarding Hoffman attorney fees pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1)[13] must

_____

[12] Further, the documentary exhibits included in the record demonstrate that prior to entering into the Stipulated Judgment in the Divorce Action, Hoffman granted his divorce attorney a security interest in Hoffman's interest in the Property by signing a deed of trust in favor of the attorney securing a debt of $100,000. At some point, a trustee serving under the deed of trust sold Hoffman's half interest in the Property to Glade Place, LLC, and a subsequent action to quiet title to the property determined that Hoffman held *no interest* in the Property by the time of the judgment in that case in 2018. Mere months later, after having been told in no uncertain terms by a court that he no longer had any interest in the Property that was one of the assets included in the Stipulated Judgment in the Divorce Action, Hoffman nevertheless sought and obtained the 2018 Abstract of Judgment, which, even on its face, does not reflect the actual Stipulated Judgment that was entered in the Divorce Action.

[13] Code of Civil Procedure section 425.16, subdivision (c)(1) provides in full: "Except as provided in paragraph (2), in any action subject to

be reversed.  Hoffman appears to concede that the trial court awarded him attorney fees, stating, "The fee order would have been proper even if Hoffman's motion had been granted as to just the slander of title claim." (Boldface omitted.)  However, neither party cites to the record in support of the assertion that an attorney fee award was actually entered.  Although the trial court's order granting Hoffman's anti-SLAPP motion invited Hoffman to seek attorney fees, this court has not found in the record on appeal an order granting such fees.  Further, the only copies of the judgment that appear in the record do not include an award of attorney fees.  Because the parties have not established that an attorney fee order was included in the record on appeal, and there is no attorney fee award included in the judgment from which the Weedens have appealed, we have no basis on which to address the Weedens' argument that any attorney fee order associated with the anti-SLAPP motion must be reversed.[14]

## IV.

## DISPOSITION

The judgment is reversed.  The trial court's order granting Hoffman's anti-SLAPP motion is reversed to the extent that it strikes the pleaded causes of action for quiet title and cancellation of instrument, and is affirmed

_____

subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.  If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

[14]  In the event that the trial court did issue an attorney fee award prior to or during the pendency of this appeal, on remand, the trial court may address the fact that our partial reversal of the court's anti-SLAPP order necessarily undermines the basis for granting an award of attorney fees with respect to the claims for quiet title and cancellation of an instrument.

to the extent that it strikes the cause of action for slander of title.  The matter is remanded to the trial court for further proceedings.  The Weedens are entitled to costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.